## Smith, et al. v. Noble, et al.

(Decided February 13, 1917.)

### Appeal from Breathitt Circuit Court.

1. Mortgages—Declaring Deed a Mortgage.—A deed absolute on its face if intended by the parties to be only a mortgage to secure a debt will be given only that effect as between the parties and purchasers with notice.

2. Deeds—Sufficiency—Notice.—An instrument sufficient to convey title to land duly signed by the grantor will have the effect to convey his title as between the parties to the instrument, although its execution was not made with the statutory formalities entitling it to registration, and the title to the land will pass as between the parties and their privies, but it will be insufficient as against a purchaser without actual notice.

3. Deeds—Delivery.—Delivery of an instrument by the one who executes it to the one to whom it is executed will be presumed, if the latter is in possession of and has accepted it, to overthrow which, as against an innocent third party, the evidence must be clear and convincing.

4. Deeds—Delivery—Evidence.—N. wrote and signed a document called a title bond but framed in terms of an absolute deed to land correctly described, and after his death the person to whom it was made being in possession of it transferred it for a valuable consideration to an innocent third party from whom the defendant derived title. Held, in a suit between the heirs of N. and the defendant, who is an innocent purchaser, the presumption in favor of delivery of the instrument by the latter is not overcome by the

testimony of the grantee to the effect that the instrument was never delivered to him, especially when there is evidence that N., after its execution, and before his death, stated that he had conveyed the land, as is evidenced by the writing.

SAMUEL M. WILSON and O. H. POLLARD for appellants.

G. W. FLEENOR for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellees are the heirs of James W. Noble, who died intestate on January 1, 1900. On February 16, 1897, little less than three years before his death, he executed an absolute deed to Hargis Brothers, a mercantile firm of Jackson, Kentucky, for about ten acres of land, which is the subject matter of this suit, and which lies in Breathitt county. The deed also conveyed other tracts of land upon which, including the tract here involved, there was a mortgage in favor of Thomas Watts for $125.00, and $14.00 due on a town lot which was included in the deed. The recited consideration in the Hargis deed is the payment to the vendors of the sum of $130.00, the receipt of which is acknowledged therein. This deed was acknowledged by Noble and wife and duly recorded.

After the death of James W. Noble, and on the 22nd day of August, 1902, Hargis Brothers, composed of A. H. and James Hargis, together with their wives, conveyed the ten acres to B. F. Fugate in consideration of his paying their debt of $130.00 and interest, which amounted at that time to $187.00. On the 18th day of July, 1906, Fugate and wife and Patrick Napier and wife, in consideration of $1,031.00 paid at the time, conveyed the land to O. H. Pollard as agent and trustee for the Lexington & Eastern Railway Company, and said agent and trustee on the 28th day of September, 1906, conveyed the land to John M. Smith, reserving, however, a strip 100 feet wide, running through it as a right of way for the contemplated extension of the track of the Lexington & Eastern Railway Company.

On July 1, 1898, James W. Noble wrote and signed, with reference to the land involved, the following writing:

"This indenture made and entered into this July 1st, 1898, by and between J. W. Noble of the first part, and C. C. Noble of the second part, all of the county of

Breathitt and state of Kentucky. Be it known, that J. W. Noble, the first part, hath sold unto C. C. Noble, of second part, a tract of land on Lost creek, that is under a mortgage to Thos. Watts & Son for $125.00 and to Hargis Co. for $130.00. Said C. C. Noble is to pay said mortgages in consideration of said land, it being the same 10 acres that was purchased from B. F. Fugate for $230.00 dollars, the said C. C. Noble is to have said land, with all of its appurtenances belonging thereto. Said boundary containing 10 acres more or less and on Lost creek and in Breathitt county, Ky.

"J. W. NOBLE."

On the back of this writing this statement appears:

"I will sine this within bond over to P. C. Napier. This Feb. 5, 1901. C. C. Noble."

About two months after the death of James W. Noble, who lived upon the ten acres, his family moved away from it and have never occupied it from that time. C. C. Noble appears to have taken charge of this particular tract. and rented it to P. C. Napier who moved upon it some time in September, 1900, and continued to occupy it until it was sold to O. H. Pollard as trustee for the railroad company. Napier's occupancy of the land was adverse to the interest of the Noble heirs and to all others, he claiming to own it by virtue of the assignment of the bond made to him by C. C. Noble. While occupying it, he paid the balance of the Watts debt, but, being unable to pay the Hargis debt, he entered into an arrangement with B. F. Fugate by which the latter should pay that debt and take deed to the land to himself. This was done, resulting in the deed executed by Hargis to Fugate, above mentioned. Napier, however, continued to occupy the land as stated, up to the time he sold it to Pollard, but it has been occupied by Smith, claiming it as his own adversely against every one, since he obtained his deed from Pollard, trustee.

In February, 1910, the appellees (plaintiffs below) as heirs of James W. Noble, brought this suit against appellants, Smith, the railroad company, Pollard, trustee, and Ed Fugate (defendants below) alleging that the deed executed by Noble to Hargis Brothers was intended to be and was in fact a mortgage, and that the defendants when they acquired their interest in the land had actual knowledge of this fact. They asked in the

petition that the deeds under which defendants claimed be canceled and that they be adjudged the owners of the land, and they furthermore demanded the recovery of the rents during its occupancy.

The answer, as finally amended before submission, consists of a denial, a plea of champerty, and furthermore relies on the execution of the bond (absolute on its face) by James W. Noble to C. C. Noble, hereinbefore copied. Upon final submission the trial court granted the relief sought by plaintiffs, but declined to adjudge C. C. Noble any interest in the land, or to take away from the defendant, Ed. Fugate, a small fractional part of an acre which he had secured, and upon which some of his relatives were buried, but it allowed the rents to be offset by improvements made upon the land by the defendant, Smith, which relief he also sought in his answer. This appeal is prosecuted by Smith, Pollard and the railway company to reverse the judgment in so far as it affects them.

The evidence leaves but little doubt in the mind that the deed executed to Hargis Brothers was intended to be and was in reality a mortgage; nor is there less doubt that B. F. Fugate, at the time he took his deed from Hargis Brothers, had knowledge of the nature of their title. There is no evidence that Pollard, trustee, acted otherwise than in the best of faith. No testimony or circumstance is found in the record whereby notice was carried home to him of any equity in the land which James W. Noble or his heirs might have growing out of the Hargis transaction or otherwise. However, one Sewell appears to have been the agent for the railway company in the purchase of the land for it, the deed to which was made to Pollard, as trustee, and there is considerable evidence in the record that he, while acting for the railway company, received information that the Hargis deed was in reality a mortgage. To say the least of it, the testimony shows that appellees as heirs of James W. Noble, were contending that the Hargis deed was only a mortgage, and that they claimed some equity in the land, which Sewell knew, so that it may be fairly assumed that so far as Fugate and the railway company are concerned, they purchased the land with knowledge of the facts as to the Hargis deed, and plaintiffs to this extent established their cause of action, provided the title of the railway company is to rest en-

tirely upon that deed. The evidence, however, is not at all clear that Smith, when he made his purchase from the trustee of the railway company, knew any of the facts impairing the title. But, inasmuch as we have concluded that the judgment is erroneous for another reason, we will not pass upon this question of fact.

It will have been seen that the deed to Pollard, trustee, was not only signed by B. F. Fugate and wife, but also by P. C. (Pat) Napier and wife. C. C. Noble, as seen, had on February 5, 1901, transferred the bond which J. W. Noble had executed to him to P. C. Napier. The consideration for this was the payment by Napier to C. C. Noble of $50.00 in cash, which was made, and the assumption of the debts to Hargis Brothers and Thomas Watts. Napier paid the latter debt and procured B. F. Fugate to pay the former one, so that he fully performed the consideration for the assignment of the bond to him. This bond, however, is attempted to be evaded because it is said that J. W. Noble never delivered it to C. C. Noble, and this fact is positively testified to by the latter. He says that he found the bond among his father's papers after the latter's death; that it was in his father's handwriting, and that he appropriated it in the manner stated. In the light of the conduct of C. C. Noble, as testified to by him, we do not find much difficulty in giving to his testimony upon this point but little credence. It is really in his favor when we say that his course, as portrayed by his testimony, is not only an unnatural one, but is so greatly tainted with dishonesty that we prefer not to adjudge him guilty of it. That he would deliberately attempt not only to deprive his brothers and sisters of their share in his father's estate in this manner, but would also attempt to perpetrate a fraud upon the assignee of his bond, we are disinclined to believe. But, giving to his testimony some weight, we find that two witnesses testified positively that after July 1, 1898, which is the date of the writing under consideration, J. W. Noble stated that he had sold the ten acres of land to his son, C. C. Noble, in consideration of the latter paying off the mortgaged debts mentioned in the Hargis deed. The evidence shows, in addition to this, that C. C. Noble and his father had been in the mercantile business, and that it was in connection with that business that the debts were created. It would, therefore, be but natural that

he would be inclined to arrange with his partner for the settlement of those debts upon which they were both bound, and it would be a reasonable presumption to conclude that J. W. Noble regarded the land at that time worth but little more than one-half the amount of those debts and interest, as he had paid, but a short while previous to that time, only $230.00 for the entire ten acres. However this may be, the law is that if one to whom an instrument is executed is in possession of it, a presumption will arise in favor of its delivery. In 13 Cyc., page 746, it is said:

"Whether there has been a delivery of a deed should, as between the grantor and grantee, be determined by the fair preponderance of the evidence; but third person's rights having intervened, the proof of non-delivery should be clear and positive, and in many cases the doctrine of estoppel precludes the grantor."

The rule upon this subject peculiarly applicable to the facts of this case is well stated in 8 R. C. L. 999, as follows:

"Generally, the possession of a deed by the grantee named therein, or by one claiming under him, is *prima facie* evidence of its delivery and acceptance, where there is nothing to impeach the bona fides of such possession, and especially where both the signing by the grantor and possession by the grantee are shown, or where the possession has continued for a long time. And while this presumption is rebuttable, and something quite short of establishing absolute non-delivery beyond all reasonable controversy is sufficient to raise a jury question, yet it has been declared that the most satisfactory evidence to the contrary will be required."

This text is fortified by opinions from a great number of the states, but we will not lengthen this opinion by incorporating them herein.

This presumption not only applies with reference to the delivery of the deed or other instrument affecting the title, but extends further, so as to include the further presumption that the delivery was made as of the date which the instrument bears. McConnell v. Brown, Litt. Sel. Cas. 446; Ford v. Gregory's Heirs, 10 B. M. 180; Alexander v. DeKermel, 81 Ky. 345; Shoptaw v. Ridgeway, 22 Ky. Law Rep. 1495.

Giving due weight to the testimony of the witnesses as to the admissions of James W. Noble that he had

sold the land to his son, C. C. Noble, and the strengthening which this testimony receives from the presumption which we have discussed, we have but little doubt as to the fact of the delivery of the paper to C. C. Noble. At any rate, his testimony to the contrary, under the circumstances surrounding it, is not sufficient to our minds to overcome the testimony as to the fact of delivery as strengthened by the presumption. The present appellants, then, have the same title which C. C. Noble transferred to Pat Napier by the assignment of the bond or deed. As between the immediate parties, the bond or deed just discussed is sufficient to pass the legal title, as will be seen from this court's opinion in the case of Ferrell v. Childress, 172 Ky. 760, wherein a similar document was under consideration, and the court in discussing its effect, said:

"Being, however, a deed in form and expression, and duly signed and delivered by the grantor, and accepted by the grantee, it was effective as between them, and those claiming under them, to pass the legal title to the land. Fitzhugh v. Croghan, 2 J. J. M. 433; Shoptaw v. Ridgeway, 22 Ky. L. R. 1495, 60 S. W. 723; Robinson v. Gray, 29 Ky. L. R. 1297, 97 S. W. 347; Burton-Whayne Co. v. Farmers & Drovers Bank, 130 Ky. 393; Cain v. Gray, 146 Ky. 402; 1 C. J., page 770; Devlin on Deeds, section 465; Tiffany's Modern Law of Real Property, sec. 405.

"Manifestly, if one has made an ineffectual attempt to make a conveyance, and has signed an instrument of writing with that purpose, but his effort fails because of the failure of an official to make the proper certificate, the writing signed by him is not void for all purposes. It is, nevertheless, if in other respects valid, a lawful obligation; and, while it is not a recordable instrument, and does not impute notice to strangers although recorded, it is good as between the parties and those having actual notice thereof."

The appellees, as heirs of J. W. Noble, occupy no better attitude than he would occupy under the same circumstances. They are his privies, and the same facts which would bind him would likewise bind them. There can be neither doubt nor room for discussion, that if J. W. Noble were alive and this suit were attempted to be maintained by him, he would be estopped from doing so by the execution of the paper to his son, C. C. Noble.

The estoppel is equally effectual against the plaintiffs, who are his heirs.

If it should be said, however, that appellee, Rachel Noble, the widow, did not sign the bond, and is, therefore, not bound by it, the answer is that she signed the deed to Hargis Brothers by which her husband was divested of the legal title, and he at the time of his death was not seized of an estate therein in fee simple. Besides, she lived in the immediate vicinity of the land, and no doubt knew that her son, C. C. Noble, had attempted to convey it to Pat Napier, who, so far as the record shows, bought it in good faith, and her claim now for dower is, to say the least of it, exceedingly stale. We, therefore, conclude that plaintiffs failed to manifest their right to any interest in the land, and that their petition should have been dismissed.

We have not discussed the facts with reference to the plea of champerty. This is based upon a deed which the heirs executed to C. J. Noble, the husband of one of the daughters of J. W. Noble, before the suit was brought, and while it was in the adverse possession of the appellants. It is true that appellees insist that the writing so executed is not a deed and conveys no title *in praesenti* in the land. If it were necessary for the disposition of this appeal to determine the question thus raised, we would have but little hesitancy in concluding that the writing is sufficient to convey a present title to the land, and that it is champertous and void, but having concluded that the judgment should be reversed for the reasons hereinbefore stated, we will not enter upon a discussion of that question.

Wherefore, the judgment is reversed, with directions to dismiss the petition and for proceedings in accordance with this opinion.