## North Jellico Coal Company v. Helton, Sr.

(Decided February 27, 1917.)

### Appeal from Knox Circuit Court.

1. Estoppel—By Deed.—Recitations in a deed showing that certain land which is recited to be in consideration of the deed, is within a particular boundary, and the acceptance of a deed for an undivided interest in the same recited land are sufficient to constitute an estoppel as against the vendor to afterwards deny that the land is within the recited boundary as against one who acted upon the recited representations.

2. Estoppel—Acquiescence in Sale of Property.—If one stands by and witnesses without protest the sale of his property to a bona fide purchaser and acquiesces in the sale without informing the purchaser of the facts, he will be estopped from afterwards claiming the property as against the purchaser or his vendee.

3. Deeds—Delivery—Presumption.—Where a vendor executes a deed, and recites as a consideration therefor another deed which the vendee executed to him, after twenty years it will be prima facie presumed that each deed was delivered and accepted, although actual possession of the deeds by the respective vendees may not be shown.

BLACK, BLACK & OWENS and J. P. HOBSON & SON for appellant.

J. D. TUGGLE and J. B. CAMPBELL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On December 23, 1889, the appellee (plaintiff) procured a patent for thirty acres of land in Knox county, Kentucky, which was based on a survey made Decem-

ber 8, 1887. Prior to that time plaintiff's brother, G. W. Helton, had, on May 20, 1887, procured a survey for twenty-one acres of land located in the same county upon which there was issued to him a patent on May 31, 1888. The fifth corner of plaintiff's patent is Devil's Gap, the location of which is well known in that community, and the fourth corner of his survey and patent is a red oak, at which point it is conceded that instead of one there are two red oaks. The call between the fourth and fifth corner is "N. 71 E. 44 poles." One of the corners of G. W. Helton's survey and patent is also located at Devil's Gap.

Directly after the plaintiff procured his patent, which is junior to that of his brother, a dispute arose between them over about twelve acres of land which is covered by plaintiff's patent, lying southeast of the fourth call above in his patent which runs between the two red oaks and Devil's Gap. It was the contention of G. W. Helton that his survey and patent covered the twelve acres lying southeast of that line, and his patent being senior to that of plaintiff the twelve acres belonged to him. After some parleying the parties seemed to have agreed upon a settlement arising out of the disputed twelve acres of land, by the terms of which plaintiff and. wife conveyed to his brother, G. W. Helton, another small tract of land not connected with this suit, and G. W. Helton and wife conveyed to plaintiff a one-half undivided interest in and to the disputed twelve acres. Both of these deeds were executed on the 12th day of . March, 1891, and both were acknowledged on that day. In the deed which plaintiff and wife executed to his. brother the consideration is stated to be: "For and in consideration of the sum of a half interest of a piece of land on the southeast side of a line run straight from the Devil's Gap to two red oaks, corner to a survey of A. B. Helton, and a line of a 50-acre survey of William Helton. *This is a part of a 21-acre survey made and patented to G. W. Helton,* the receipt of which is hereby acknowledged."

In the deed of G. W. Helton and wife to plaintiff the consideration is stated to be the land which A. B. Helton and wife conveyed to G. W. Helton, and the description of the land being conveyed by that deed is: "A certain parcel or tract of land, being in the county of Knox and state of Kentucky, *a portion of the 21-acre survey*

*made and patented to G. W. Helton,* this being a one-half interest in a portion of said survey on the southeast side of a line straight from the Devil's Gap to two red oaks, corner to A. B. Helton's survey on a line of a survey made by William Helton.''

There was never any deed of partition made between A. B. and G. W. Helton of the twelve acres in question, but on April 2, 1891, within less than a month from the execution of the deeds between them, plaintiff executed a deed to three separate tracts of land to the appellant (defendant), the third tract being for six and one-half acres, and conforming to the description of the southeast half of the twelve acres. On that same day, G. W. Helton executed a deed to the defendant for the land covered by his twenty-one-acre patent which he and defendant claimed not only covered the northwest half of the twelve acres (the land involved here), but all of the twelve acres. Previous to the conveyance made to the defendant, the overwhelming weight of the evidence shows that there had been an oral division of the twelve acres, allotting to G. W. Helton the *northwest* half and to A. B. Helton the *southeast* half, the division line being designated on the map found in the record running between the figures 7-8. These deeds to the defendant were each acknowledged by the respective grantors before the same officer, and shortly after their execution were put to record. For some time the defendant has been operating a coal mine, and has extracted a considerable amount of coal from the northwest half of the twelve acres referred to (lying immediately southeast of the line between Devil's Gap and the two red oaks), and this suit was filed by plaintiff against the defendant to recover that portion of the twelve acres, as well as damages for coal removed therefrom, and injury to and destruction of timber in a total sum of $5,100.00, upon the claim that the land is covered by his patent, and not by his brother's patent.

The answer is a denial of all of the allegations of the petition, and asserts title to the land in the defendant, and in another paragraph an equitable estoppel is pleaded against plaintiff's right to recover either the land or any sum in damages. The facts alleged in the answer which is claimed estops plaintiff are that the defendant had purchased the land in controversy (being only about six acres) from another (G. W. Helton) and

paid a valuable consideration therefor, and that plaintiff had full knowledge of the sale of the land to defendant by the other person (G. W. Helton), and stood by and acquiesced therein, and admitted and represented such other person to own the land and acquiesced in its sale. Upon the trial of the case there was a verdict in favor of plaintiff for $1,000.00, upon which judgment was rendered, and he was also adjudged to be the owner of the land in controversy. Complaining of that judgment, this appeal is prosecuted.

A great deal of the testimony, as well as argument of counsel, is directed toward the location of the land covered by the two patents, one issued to G. W. Helton and the other to plaintiff, and counsel have displayed much learning and great research in an effort to properly locate these two patents, but, according to our view, their proper location, especially the one issued to G. W. Helton, is not necessary to a correct determination of the questions presented. It is true that if it were conclusively shown that G. W. Helton's patent included the land in controversy, this suit would necessarily have to be determined in favor of the defendant, as it is the owner of the lands covered by that patent, which is senior to plaintiff's patent, and under the thoroughly established rule in this jurisdiction the plaintiff's patent to the extent of the lap would be void.

There is considerable dispute, however, as to the true location of G. W. Helton's patent, as well as some doubt as to whether it covers the land in controversy. But, however this may be, as we have seen, on the 12th day of March, 1891, the plaintiff recognized in the deed which he that day executed to G. W. Helton that the land in controversy was *covered by the G. W. Helton patent,* and it was further recognized and even stated in that deed that plaintiff had no interest in the land in controversy except that which he was that day obtaining under a deed executed by G. W. Helton and wife to himself, which interest was a one-half undivided one in and to twelve acres of land constituting what G. W. Helton claimed to be the lap of plaintiff's patent on his patent.

With matters in this condition, plaintiff sold about one-half of that twelve acres to the defendant on the 2nd day of April, 1891, and on that same day G. W. Helton sold to defendant all the land covered by his patent. At this point it may be noticed that plaintiff denies all

knowledge of the deed of G. W. Helton to himself of date March 12, 1891, and denies that it was ever delivered to him or accepted by him. But in view of the fact that he refers to that deed as a consideration for the one which he on that same day executed to G. W. Helton, we are not disposed to accept his denial of the delivery and acceptance of G. W. Helton's deed to him. Furthermore, one can hardly read this record without being driven to almost the conclusive conviction that the deeds passing between plaintiff and G. W. Helton were executed in furtherance of a purpose to convey the land to the defendant, and that the deed executed to the defendant on April 2, 1891, was but a carrying out of that purpose, and was so understood by plaintiff, G. W. Helton, and the defendant, being all of the parties interested. Not only does the evidence, as we have said, abundantly justify such an inference, but it is shown that the coal company, shortly after obtaining its deeds, marked its lines by the placing of stones at different places or corners around the land in controversy, as well as perhaps other lands conveyed to it, and that plaintiff witnessed the placing of the stones and made no protest. It is furthermore to be seen that more than twenty years elapsed before he invoked the process of the law for the adjustment of his alleged rights. If the defendant or its vendors had been in the actual, adverse possession of the land for all of that time, the plea of fifteen years' limitations would constitute a bar to this suit, but the lands appear to have been wild lands, and have not been in such possession as to cause the statute of limitations to run. The length of time in which plaintiff remained silent does, however, taint his claim with being stale, and is a circumstance which, taken in connection with the deeds between himself and his brother, G. W. Helton, is sufficient to justify the conclusion hereinbefore alluded to.

We, perhaps, should have said that plaintiff denies that he intended to convey to the defendant the third tract of land mentioned in his deed to it, of date April 2, 1891, which appears to be practically one-half of the twelve acres above referred to, but there is no effort made to attack that deed for fraud or mistake or for any other cause, and he is bound by the recitals therein.

Upon the question of the delivery of the G. W. Helton deed to plaintiff, in addition to what we have said as to

the facts disclosed by the record, it is a well settled rule of law that under circumstances similar to the ones here, the delivery and acceptance of a deed will be presumed, and the production of the deed duly executed, acknowledged and recorded is *prima facie* evidence of its delivery and acceptance. Smith v. Noble, 174 Ky. 15 (decided Feb. 13, 1917), and authorities therein referred to. 8 R. C. L., sec. 66, page 1004; Holman v. Mc-All, 64 Amer. Dec. 647.

It is insisted, however, that the estoppel pleaded in the answer is one *in pais* only, and founded upon the fact that plaintiff represented that his brother owned the land and stood by and witnessed the conveyance of the land in controversy to the defendant by his brother without protest, and acquiesced therein, which, if true, is sufficient to constitute an estoppel of the character pleaded. Trimble v. King, 131 Ky. 1; Acme Mills & Elevator Co. v. Johnson, 141 Ky. 718, and many other cases which might be cited. Upon this the contention is made that the facts constituting the pleaded estoppel should be confined to those occurring at the *time* the defendant *procured* its deed from plaintiff and G. W. Helton, and that the recitations made in the deeds between those two, although perhaps evidence of an estoppel, cannot avail the defendant because not pleaded. In other words, that the estoppel pleaded is not proven, and the one proven, if any, is not pleaded. The error here is that the proven estoppel is not one by deed as is argued. Such estoppels apply only between parties to the deed and their privies, but estopping representations may be made orally or in writing, and are effectual to bind the one who makes them if they are relied, and acted upon in good faith by another in the belief that they are true and thereby his position is materially altered and changed. We have seen that the estoppel as pleaded relies upon the fact that plaintiff represented and acknowledged that G. W. Helton owned the land in dispute at the time he executed his deed to the defendant on April 2, 1891. Such acknowledgment and representation need not be made at any particular time other than they should precede the conveyance. The statements and recitals in the two deeds between G. W. Helton and plaintiff are continuing representations on the part of plaintiff that the land sued for is *within the G. W. Helton patent*. These representations have never

been withdrawn, and were never offered to be withdrawn until the filing of this suit. They constitute a part of plaintiff's conduct with reference to the title of the land involved, and will prevent him from claiming it now after defendant's rights have attached, and we, there-fore, think that the plea of estoppel is sufficiently broad to admit as evidence the recitations found in the deeds between plaintiff and his brother.

A reading of this record convinces us that this suit is an afterthought on the part of plaintiff, occurring after the property had advanced and had been made valuable and profitable by the operation of the mining interests of defendant. We are equally convinced that the plea of estoppel should prevail, and the jury should have been instructed to return its verdict in favor of the defendant.

Wherefore the judgment is reversed, with directions to proceed in accordance with this opinion.