## Lisle's Administrators  v.  Oliver.

(Decided November 1, 1918.)

## Appeal from Clark Circuit Court.

1. Depositions—Failure to File Exceptions to Deposition—Waiver—
   A party, who files exceptions to a deposition, and who never
   causes them to be passed upon by the trial court, and they are
   not passed upon, will be presumed upon an appeal to have waived
   the exceptions.

2. Estoppel—Reliance Upon Representation.—Before a party can
   rely upon an act or representation of another as an estoppel, it
   must appear that such party relied on the conduct or representa-
   tion of the other and was thereby induced to alter his position
   for the worse or have suffered some injury of substantial char-
   acter.

PENDLETON & BUSH for appellants.

HAYS & HAYS and J. M. BENTON for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

This action was instituted by the Winchester Bank
against the personal representatives of Claiborne Lisle,
deceased, and Charles Oliver to recover against them,
a judgment upon a promissory note, which Claiborne
Lisle and Charles Oliver had executed to the bank on the
27th day of July, 1909, for the sum of $16,673.00, and due
in twelve months after date, with interest at 6% per
annum from the date of execution, until its payment. The
note bore the following credits: $1,100.00 paid Novem-
ber 22, 1910; $5,000.00 paid December 7, 1910; $1,050.00
paid February 16, 1911; and $3,477.50, paid February
28, 1911. The sums, for which these credits were given,
were paid by Charles Oliver. There was no defense
offered to the recovery of the unpaid portion of the
debt, for which the note was executed, in favor of the
bank, and it obtained a judgment, for the sum of
$7,998.83, the unpaid balance of the note, and $12.90,
costs, against Charles Oliver, and the administrators of
Claiborne Lisle, and the administrators, at once, satis-
fied the judgment by paying to the bank the amount of
the recovery.

The note sued on, was subscribed by Charles Oliver,
and by Claiborne Lisle, the latter of whom, in signing

same, added to his name, the word, "security." Charles
Oliver was a grandson of Lisle, his mother, Zipporah,
Oliver, having been a daughter of Lisle. Charles Oliver
was a son of Henry Oliver, who died in the year, 1907.
Lisle died in the year of 1910, and Zipporah Oliver had,
also, died, before the institution of this suit. Before
the rendition of the judgment upon the note, in favor of
the Winchester Bank, Charles Oliver filed an answer,
which he made a cross-petition against the administra-
tors of his grandfather, Claiborne Lisle, and in which
he averred, that he and Claiborne Lisle, were joint prin-
cipals, in the note sued upon and that the note repre-
sented an indebtedness of both of them, and denied that
Lisle was a surety upon the note, and alleged, that
Lisle had added the word, "security" to the signature
of his name, without his, Oliver's, knowledge or consent.
He furthermore, averred, that the note sued on was a
renewal of other notes, which represented debts, for
which his father, Henry Oliver, and Lisle were jointly
bound as principals, in the year of 1885, and that the
notes, which they gave, promising to pay the indebted-
ness, were renewed from time to time, by Henry Oliver
and Lisle, until in the year, 1907, Henry Oliver died, and
that he was the only heir of Henry Oliver, and inherited
all of his property and to the extent of the property,
was bound for his debts, and that thereafter, in the re-
newal of the notes, he assumed the place of his father, as
a co-principal with Lisle, and that, also, he was the per-
sonal representative of his father, and that his father,
and he, as administrator of his father's estate, and per-
sonally, had paid upon the debt, up to November 11, 1914,
the sum of $19,281.13, while the administrators of Lisle
had paid only the sum of $8,011.73, the judgment of the
Winchester Bank, and the amounts paid by his father
and himself, exceeded the sum, which had been paid by
Lisle and by his administrators in the sum of $11,269.40,
and prayed for a judgment against them for one-half of
this excess, or $5,634.70, with interest at 6% per annum
from November 11, 1914.

The administrators of Lisle, admitted, that Henry
Oliver and Lisle were bound as co-principals for the
debts, which the note sued on represented, from their
creation, until the renewal of the note, on December 22,
1902, when, as they alleged by agreement between Oliver

and Lisle the former became sole principal and Lisle became his surety, and thereafter, Lisle, in the renewals of the evidence of the debts was only a surety and that Charles Oliver on the 21st day of November, 1910, borrowed from the executors of Lisle, the sum of $5,000.00 to be paid upon the note, sued on, and executed to them a mortgage to secure the loan, and at the same time executed to them three assignments of notes which he owned to secure them in any sums, which they might pay upon the note, and that by the terms of the mortgage and the assignments, he was estopped to deny, that he was the sole principal, bound for the payment of the note, and to deny that Lisle was only a surety. The administrators, also, pleaded, that the consideration for the agreement, between Henry Oliver and Lisle, by which it was alleged, that Oliver became sole principal obligor, and Lisle his surety, was the conveyance of certain lands to his daughter, Zipporah Oliver, by Lisle. These averments were all denied by Charles Oliver, who further, pleaded, that the lands were conveyed to his mother, by her father, as an advancement, to her, out of his estate, and that on account of certain agreements made by the administrator and heirs, in a suit to settle the estate of Lisle that the administrators were now estopped to deny that the lands were not conveyed as an advancement to Zipporah Oliver. This alleged estoppel was denied by the administrators, who, also, sought to recover from Oliver the amount of the judgment, in favor of the Winchester Bank, which they had paid, and, also, alleged, that, in 1903, Lisle had paid upon the debt, the sum of $265.10, which they were entitled to recover, or by which they were entitled to credit, in a settlement. The payment of the $265.10 by Lisle was denied by Oliver. The court adjudged that appellee, Charles Oliver, should recover of the appellants, as administrators, the sum of $6,294.80, with interest at 6% per annum from 20th day of December, 1916, or one-half of the amount which had been paid upon the debt by the Olivers, in excess of the sums, which had been paid by the administrators of Lisle, with interest, and denied the appellants the benefit of the payment by Lisle of $265.10, in 1903.

The appellee, Charles Oliver, testified as a witness, and exceptions to the competency of certain portions of

his depositions were filed, but, the court, below, never, passed upon the exceptions, and the record does not disclose, that it was ever requested to do so, and hence, objections to the testimony of the witness on account of incompetency, must be considered, as having been waived.

Hence, it is apparent, that the only real issue, between the parties, is whether Lisle was a co-principal with Oliver, in the execution of the note, and bound for the payment of one-half of the debt, as between him and Oliver, or was he a mere surety of Oliver, and as between them not obligated to pay any portion of the debt. Besides being admitted by the pleadings, the evidence shows, without any contradiction, that in 1885, the debt was a joint obligation of Lisle and Henry Oliver. They were both principals. In fact, there is no intimation to the contrary. The notes executed by Oliver and Lisle, as evidence of their indebtedness, and they were renewed a number of times, were signed by them with their names, without anything to indicate that they were not co-principals, until the renewal of the note, on December 22, 1902, when Lisle for the first time, added the word, "security" to his signature. Of course, Lisle could not change his relationship to Oliver as co-principal, in the note, to that of a surety, without, at least Oliver's consent and agreement, and such agreement to be binding upon Oliver would have to be based upon some valid consideration as between them. There is an entire absence of any proof, which even tends to show, that Oliver ever agreed or consented to such change, and there is no evidence conducing to prove, that there was any kind of an arrangement or transaction between Oliver and Lisle, from which it could be inferred, that, such agreement had probably been entered into. The signature of Lisle was placed upon the note, executed December 22, 1902, after that of Henry Oliver had been subscribed to the note, and it is not shown that Oliver ever knew, that Lisle had added the word "security" to his name. The notes evidencing the debt, and which were executed on December 22, 1902, were taken up by renewals, executed on June 8, 1905, and to these latter notes Lisle subscribed his name without adding the word "security" to it. After the death of Henry Oliver, the debt was again renewed, by Charles Oliver and

Lisle, and to this note, Lisle did not add the word "security" to his signature, but, when that note was taken up and the renewal note of July 27, 1909, the note sued on, was executed, Lisle again added the word "security" to the signature, of his name. The fact, that Lisle added the word "security" to his signature, to the renewal notes of December 22, 1902, and of July 27, 1909, and, the inference that his act was known to Henry Oliver, on the first occasion and to Charles Oliver on the latter occasion, and that they had consented and agreed thereto, because they executed and delivered the notes, also, is the entire evidence upon which it is contended, that Lisle became a surety, and ceased to be a principal, in the notes on December 22, 1902, and the note sued on, of date July 27, 1909.

The only reason offered, for Henry Oliver consenting to assume the payment of the entire amount of this large debt, and to release his father-in-law from any liability for it except a liability as a surety for him, to the owner of the debt, and from which it is argued, that an agreement was made betwen Oliver and Lisle to that effect, is that on the 29th day of October, 1903, nearly a year after the agreement must have been made, if made at all, Lisle conveyed to his daughter, Oliver's wife, certain lands, which were valued as an advancement by him to her, at the sum of $5,000.00. The evidence shows, that not far from the time of the conveyances to Mrs. Oliver by Lisle, he conveyed lands as advancements to certain others of his children, which were worth, largely, more than the lands conveyed to Mrs. Oliver. Lisle declared to others, that he had given the lands to his daughter, Mrs. Oliver, and charged them to her upon a small book kept by him for that purpose as an advancement to her, at the sum of $5,000.00.

There is no evidence to the contrary. Hence, to hold that the conveyance of these lands to his daughter by Lisle, proves the contention, that Oliver agreed to assume the payment of the entire joint debt and to release Lisle therefrom, except as a surety, is to hold contrary to all the evidence. Lisle's portion of the debt, which it is contended that Oliver assumed, was nearly twice as great, as the value placed by Lisle upon the lands, which he conveyed to Mrs. Oliver. That such an agreement never existed, is proven by the message of

Oliver to Lisle, just preceding Oliver's death, in 1907, in which he sought to know, if Lisle was going to permit the burden of the entire debt to fall upon him; and that Lisle then recognized the fact, that he was co-principal upon the note, is proven by Lisle's answer, to the effect, that he was ready to pay his portion of the debt, whenever Oliver should be ready to discharge his portion.

On the 21st day of November, 1910, the Winchester Bank placed the note sued on, in the hands of an attorney, for collection. The attorney called upon Charles Oliver to pay it, and suggested, that it was the last day upon which a suit could be filed for the following term of court, in the county. Charles Oliver immediately began to make efforts to pay a portion of the note, and an arrangement was entered into between him and the executors of Lisle, who was then dead, to loan him the sum of $5,000.00 to pay upon the note. To secure the loan, he executed to them a mortgage upon certain lands. At the same time, he assigned to them three promissory notes, as he says to secure the $5,000.00. The attorney, who had the note for collection, was, also, the attorney for the executors, and seems to have chiefly made the arrangement between the executors and Oliver, and prepared the mortgage and the assignments. The note showing upon its face, that Lisle was a surety, the attorney, in preparing the mortgage, described the note as being the obligation of Oliver, with Lisle, as his surety, and the assignments upon the notes described the note, the payments upon which by the executors, they were intended to secure, as the debt of Oliver, with Lisle, as surety. It is insisted, that by reason of the execution of the mortgage and assignments, that Charles Oliver was estopped to deny, that he was sole principal obligor, in the note, and that Lisle was his surety. To avoid the effect of these apparent admissions by Oliver, of the relationship of Lisle to the debt, Oliver denied, that he ever knew, that Lisle had attached to his name the word "security," in signing the note sued on, and claimed that he had executed the mortgage and assignments without reading them, and without knowledge, that, they described the note as his debt, and Lisle as a surety. While the execution and delivery of the mortgage and assignments was an evidence of an admission, upon the part of Oliver, that Lisle was a surety and not

a principal, and was competent evidence tending to prove, that he had knowledge to the effect, that Lisle was a mere surety, and that he had consented and agreed thereto, it is manifest, that the execution of the mortgage and assignments, did not constitute an estoppel, which as a matter of law precluded Oliver from denying that Lisle was a surety, and from contending and proving that he was a co-principal. The executors of Lisle, by the execution of the mortgage and assignments, were not induced to alter their position for the worse, and they suffered no loss by reason of the terms of the note or assignments. They did not loan the $5,000.00 to Oliver nor pay anything upon the note for him, because of any admission by him, in the mortgage or assignments that he was the principal debtor and that Lisle was his surety, but, because of the fact, that he secured them, in the loan of the $5,000.00, by the lien, which the mortgage created upon his land, and paid the other payments upon the debt, because they were secured by the assigned notes, which they collected and paid upon the debt. Ratcliffe v. Bellefontaine Iron Works, 87 Ky. 559; O'Malley v. Wagner, 25 R. 810; Goins v. Taylor, 18 R. 468; Garrott, &c. v. Ratcliffe, 6 R. 72; Crockett v. Lashbrook, &c., 5 Mon. 544, 16 Cyc. 744; Meriwether v. Lewis, 9 B. M. 179.

It can only be conjectured, why Lisle, in subscribing his name to the notes dated December 22, 1902, and the note sued on, dated July 27, 1909, added the word "security" to his name, but, the act was only a self-serving one, and is not sufficient to prove, that it was done in pursuance of an agreement with his co-principal to that effect, when there is no evidence of any such agreement and no reason for its being made and no consideration for his release as a co-principal. The execution of the mortgage and the assignments of the notes by Charles Oliver, in which the admission is made that Lisle was a surety would, under some circumstances, be very weighty evidence as to the relationship of the parties to the debt, but, under the facts of this case, it is insufficient to prove that any change had ever been made, in the relation of Lisle to the debt, and the other facts proving so conclusively that Lisle and Oliver were co-principals in the obligation of the note, it can only be concluded, that Oliver made the admission, in the mortgage

and assignments of the notes, that Lisle was a surety, by mistake.

(b) In determining the sum for which Charles Oliver should have judgment against the administrators of Lisle, on account of the payments made in satisfaction of the debt, the court declined to adjudge, that the administrators were entitled to the benefit of the $265.10, which was paid as a credit upon the debt, by Lisle, in the year, 1903, and in this, the court was in error. The payment of the $265.10, was made by Lisle with a check upon his own account, in bank. While it is further, shown that at or near the same time, Lisle discovered that one Sim Oliver, who was then dead, had to his credit such sum, in the bank, and by some means procured it to be transferred to the credit of his own account, and then executed the check, which went as a credit upon the debt sued on for $265.10, it can not be assumed, in the absence of any showing to that effect, that it was wrongfully procured to be credited to Lisle's account, and if it was done without right, Lisle, alone, was responsible to the estate of Sim Oliver for the money, and as between him and Henry Oliver, he would be entitled to the benefit of the payment.

For the reason, alone, that the court erred, by failing to give the appellants the entire benefit of the payment upon the debt by Lisle, of the $265.10, in 1903, the judgment is reversed and cause remanded, with directions to enter a judgment in conformity to this opinion.