## Wabash Drilling Company v. Ellis.

(Decided June 21, 1929.)

(Rehearing Denied November 12, 1929.)

770

SANDIDGE & SANDIDGE, M. L. HEAVRIN and OTTO C. MAR-
TIN for appellants.

E. B. ANDERSON and O. L. FOWLER for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—
Affirming.

On June 15, 1926, Jane Daniel gave an oil lease to
J. R. Thomas, assignor of the appellee, James C. Ellis,
on a 30-acre tract of land in Ohio county.

On March 2, 1928, B. L. Gossett gave leases on two strips of land to the appellants, Ambrose and Timberlake, who assigned fractional shares to the appellants Hartman and Sargent, partners doing business as the Wabash Drilling Company. These two strips of land were included within the boundary leased by Mrs. Daniel to Thomas. One of them was 30 feet wide, 2,400 feet long, running in a straight line on the east side of the 30-acre tract, and the other was a strip 30 feet wide running on a ridge in a sinuous course diagonally through the tract contiguous to and including a roadway, leading from the first-mentioned strip at a point near the southern end to a county road bounding the tract on the north.

This litigation arises over the conflicting leases.

After acquiring the Gossett leases, appellants, at considerable expense, had rigs moved onto one of the strips and sunk one well about 500 feet and another about 70 feet deep. The appellee then brought this suit against the owners of the lease, Mooney, their driller, Gossett and wife, and Jane Daniel and her husband, asking an injunction restraining the defendants from trespassing upon the strips and mandatorily requiring them to remove the equipment, and further asked that the title of the plaintiff (now appellee) to the entire 30 acres be quieted. A temporary injunction was granted, and thereafter, when the case was tried on its merits, the injunction was perpetuated and relief granted. From that judgment this appeal is prosecuted.

Jane Daniel did not secure a deed from Gossett, her brother, to this property, which she had leased to appellee's assignor, until September 1, 1927, one year and three months thereafter, about which time it seems producing oil wells were brought in on adjoining land. The deed contained this reservation: "The party of the first part expressly reserves from this conveyance a strip of land 30 feet wide on the ridge where the road is now located. Also expressly reserves from said conveyance a strip of land 30 feet wide along the east side of said tract. Each of these strips are reserved from this conveyance and not included therein, and the party of the first part retains title to same."

It was also recited: "This deed is made pursuant to a contract dated November 27, 1909, which contract is surrendered to the grantors."

Both Gossett and Jane Daniel testify that there was never any such contract or other previous writing evidencing the sale of this parcel of land, but neither undertakes to explain the reference in the deed. Although not persuasive, another witness testifies that he had seen such an instrument. If there was such a contract, then it follows that the exceptions were likewise contained in it, and Jane Daniels was therefore without authority to lease the strips. If there was no such writing, then she was without title to any of the parcel, and consequently without authority to lease it. But whatever the trade was, or howsoever evidenced, it was merged in the deed (Maple v. Truax, 198 Ky. 801, 250 S. W. 124), and both parties and their privies are bound by the statements in the deed. Engle v. Bond Foley Lumber Co., 173 Ky. 35, 189 S. W. 1147, and authorities cited; Virginia Iron, Coal & Coke Co. v. Combs, 186 Ky. 261, 216 S. W. 846.

Gossett and appellants were therefore estopped to deny the existence of the title bond and the right of Jane Daniel to lease the property so conveyed to her, and which she had had in possession, on the ground that she was holding it under a verbal contract, which, of course, would be without validity. On the other hand, the grantee and the appellee, as her lessee, will not be permitted to say she had title to the strips across the parcel, for Jane Daniel never acquired title to them. So, when Gossett leased the strips in controversy, six months after making the deed, he had title thereto, and had the right to execute a valid lease unless prohibited by extraneous facts or circumstances.

Appellee did plead an estoppel and also set up the claim that the two strips of land are and have been for many years passways and public roads. But we need not consider the question of passways, acquired by prescription or otherwise, although we may observe that the evidence as to adverse use and prescriptive right is not convincing, particularly as to the east strip of land.

Under the plea of estoppel, the following was shown: Some years ago B. L. Gossett acquired title from the Helfrich Lumber Company to the 30-acre tract and 120 acres adjoining it on the south where he now lives. In June, 1926, before he acquired the Daniel lease, J. R. Thomas (appellee's assignor) obtained from Gossett an oil lease on the 120-acre tract, and in the conversation he suggested to Thomas that he might get a lease on the land of his sister, Jane Daniel. Thomas testifies that he

then asked Gossett about Mrs. Daniel's title,. and he told him that he did not know about the 50-acre tract on the other side of the county road, but as to the 30-acre parcel it was all right, as he once owned it and knew her title to be good. Moseley, a deputy county clerk who accompanied Thomas, fully sustains him. Thomas says that he relied upon these representations of Gossett. However, Gossett contradicts Thomas and Moseley, and says that he was only asked concerning what is called the Griffith estate reservation (apparently mineral leases given some years before on some land in the vicinity), and that he told Thomas that he knew there was no such reservation on the 30 acres; and further that he told him at the time that he (Gossett) owned two strips running through that tract. Gossett is corroborated by several men who were setting out tobacco for him and who claim to have heard the conversation. But Thomas and Moseley say these men were several hundred feet away and heard no part of the conversation. The probabilities support Thomas and Moseley's version of the representations, for it is not likely that Thomas would have proceeded at once to take a lease for the entire parcel without reference to any excepted strips and without any sort of inquiry of Jane Daniel regarding them if Gossett had told him he owned such strips. Neither is it probable that Gossett would have executed to Thomas a lease on all of his other land and omitted the strips which he that day was claiming. Thomas and Moseley also testified that the lease which they had secured from his sister, Jane Daniel, describing the 30 acres without exception, was read by or to Gossett and he raised no objection. Gossett again contradicts them. At that time, as stated, there was no title of record in Jane Daniel. Furthermore, Gossett stood by and let appellee take possession of the entire 30 acres and proceed with the development without objection so far as the record discloses. It was not until after appellee had proved that there was oil under the tract that Gossett executed the lease on the strips in controversy.

Taking these things into consideration, supported by the familiar rule as to the weight to be given the decision of the chancellor on a question of fact concerning which there is conflicting evidence, we must hold that the facts are as claimed by appellee, and are constrained to hold that Gossett's conduct was such as estops him from successfully claiming against appellee the superior right to lease the strips of land involved.

It is a just rule which stops and precludes a man from asserting a claim against one who in good faith has relied upon his previous contrary representation, either by word or act, in regard to such claim or concerning such matter, and who has thereby been induced to do something to his prejudice. Hodge Tobacco Co. v. Sexton, 166 Ky. 219, 179 S. W. 36; North Jellico Coal Co. v. Helton, 174 Ky. 335, 192 S. W. 32; Lisle's Adm'rs. v. Oliver, 181 Ky. 829, 205 S. W. 954; Lockhart v. Kentland Coal & Coke Co., 182 Ky. 673, 207 S. W. 18; and many other authorities. It is thus stated in Davidson v. Kelley, 64 S. W. 623, 23 Ky. Law Rep. 1011: "And we think the general rule is that if one induced to purchase land by the acts or representation of another, designed to influence his conduct and creating reasonable belief on his part, under which he acts, that he has thereby acquired a valid title to the same, the party who thus influences him is estopped from setting up his own title existing at the time of the purchase against that of the purchaser."

The doctrine of estoppel rests on the ground that a party will not be heard to admit or deny a fact, the existence of which he has once denied or admitted to the prejudice of another who was induced to act upon the truth of his admission or denial. Bush v. Chenault's Ex'r, 175 Ky. 598, 194 S. W. 777. Except for his representations and conduct, Gossett's claim to title to these strips would be meritorious, but by reason thereof he is precluded from now asserting his claim against appellee. Amburgey v. Adams, 196 Ky. 646, 245 S. W. 514. As indicated, Gossett stood by and saw the development of the property by appellee, making no claim to title to any part of it. One is concluded not only by what he says or does but by the natural and reasonable inferences from his declarations and conduct. Irvine v. Scott, 85 Ky. 260, 3 S. W. 163, 8 Ky. Law Rep. 911; Wright v. Williams, 77 S. W. 1128, 25 Ky. Law Rep. 1377.

And as Gossett is estopped, so also are the appellants. There is substantial evidence to the effect that they had actual knowledge that appellee was claiming that his lease covered the strips in controversy. They also had constructive notice, for the Daniel lease was a matter of public record. It is the general rule that an estoppel operates on privies of the original party. 10 R. C. L. 837, 21 C. J. 1179; Howard v. Straight Creek Coal Co., 140 Ky. 700, 131, S. W. 804. A subsequent grantee (appellee) may rely upon any ground of estoppel against

the original grantor, Gossett, which the original grantee, Thomas, could rely upon. Lockhart v. Kentland Coal & Coke Co., supra. In Arnett v. Stephens, 199 Ky. 733, 251 S. W. 947, it is shown that the assignee of an oil and gas lease receives only such right as his assignor had and no more, and that he is in no better position than an assignor to defend against outstanding equities. The application of these principles was made in Scottsville Oil Co. v. Dye Bros., 203 Ky. 496, 626 S. W. 615, and their application to the facts of this case likewise results in the conclusion that the appellants are estopped to claim a lease on these strips as against the appellee.

The appellants also attack the validity of appellee's lease on the ground that the husband of Jane Daniel did not sign it, and consequently appellee has no right to question their lease. The husband's name appears on the lease, and the certificate of the acknowledging officer shows that he did execute and acknowledge it before him. However, it is conclusively shown that the husband was not present when the lease was executed by his wife and did not sign his name or authorize any one else to do so. It was put upon the instrument in his absence by Mrs. Daniel's brother-in-law, in the presence of Moseley, who took the acknowledgment, as a deputy county court clerk, or by Moseley himself; the evidence being conflicting as to which one did it. Moseley accompanied Thomas, appellee's assignor, while he was getting leases in the neighborhood, and at least in this instance was primarily serving him instead of acting officially. His conduct in thus falsely certifying the execution and acknowledgment of this lease by Daniel is reprehensible and violative of his official obligation. However, on January 10, 1928, which was before Gossett undertook to lease the strips of land, Jane Daniels sold to appellee Ellis, one-half of her royalty rights under the lease which she had given Thomas, and, in conveying such rights, she and her husband executed a paper which incorporated in full the original lease. By this instrument both of them specifically ratified that lease and in effect re-executed it. This, then, validated the lease. Waiving the question of appellants' right to question its validity, we must hold that this ground of attack on the lease cannot be sustained.

It follows, therefore, that the judgment should be and is affirmed.