# DECISIONS

OF THE

# COURT OF APPEALS OF KENTUCKY

## SEPTEMBER TERM, 1908

CASE 1.—ACTION BY R. F. P. TRIMBLE AND OTHERS AGAINST DAN KING FOR OBSTRUCTING A PASS-WAY.—December 15.

## Trimble v. King

Appeal from Logan Circuit Court.

W. P. SANDIDGE, Circuit Judge.

Judgment for defendant, plaintiff's appeal—Affirmed.

1. Estoppel—Right of Way—Termination.—One having an easement of a right of way over land of another may be estopped from denying the right of the owner of the land to close the way.

2. Equitable Estoppel—Nature and Grounds.—The doctrine of estoppel extends to real and personal estate, and rests on the theory that a person who has induced another to believe and act in a certain manner will not afterwards be permitted to prejudice such person, because of the acts done under the belief that they were consented to.

3. Elements—Knowledge.—One will not, as a general rule, be estopped by his acts, unless he understands his rights and actively participates or silently acquiesces in conditions operating to deprive him of such rights.

4. Acts Constituting Estoppel.—If one having a right, and seeing another about to infringe it, stands by in such manner as to

induce the person doing the act to believe that he consents thereto, when otherwise such person might have abstained from doing the act, he is estopped from complaining of it.

5. Operation—Title to Property.—A person may be divested of title to land by estoppel.

6. Termination.—A passway had been used by the public for 50 years. Its use by the public greatly diminished, and it became of little use to any one except plaintiffs, and as to them the way was .convenient, but not necessary. The owner of the land obstructed the way and made it a part of his farm. At a point where there was a low place in it, he made a large and valuable pond at considerable expense. Plaintiffs lived near to the land and were apprised at the time that the way was closed, and also knw of the making of the improvements, but made no objection. The facts were known generally to all others in the neighborhood or to those who had any interest in the way remaining open. No one made any objection until more than two years after the completion of the improvements. Held, that plaintiffs were estopped from requiring the removal of the obstruction of the passway; it appearing that all persons for whose benefit the way was kept open had consented to having it closed by failing to speak when it was their duty to speak.

SELDEN Y. TRIMBLE and J. B. GRUBBS for appellants.

### SUMMARY.

Upon the whole case taking into consideration all the facts, and giving such construction as is in every case most unfavorable to appellants, and in the light of the law as so often declared by this court, and resolving every doubtful proposition against appellants, we confidently submit to the court, that beyond any and every question the roadway in controversy has been dedicated to the public, and duly accepted by it for many years, and that the public and no person whatsoever has been in any legal or other manner divested of the right and title. We respectfully ask a reversal.

### AUTHORITIES CITED.

Smith v. Pennington, 28 Ky. Law Rep. 1282; Riley v. Buchanon, 116 Ky. 625; Commonwealth v. Terry, 27 Ky. Law Rep. 684; Anderson v. Southworth, 26 Ky. Law Rep. 776; McPherson v. Thompson, 28 Ky. Law Rep. 266; O'Daniel v. O'Daniel, 88 Ky.

Trimble v. King.

185; Larkin v. Ryan, 25 Ky. Law Rep. 614; Jones v. Jones, 31 Ky. Law Rep. 183; Sparks v. Rogers, 29 Ky. Law Rep. 1156; Chenault v. Gravitt, 27 Ky. Law Rep. 403; Byars v. Rash, 30 Ky. Law Rep. 1153; Ray v. Nally, 28 Ky. Law Rep. 426; Crigler v. Newman, 29 Ky. Law Rep. 27; Schwer v. Martin, 29 Ky. Law Repp. 1221; Trustees, &c., v. Slaughter, 31 Ky. Law Rep. 915; Big Sandy Ry. Co. v. Bays, 31 Ky. Law Rep. 289; Wright v. Willis, 23 Ky. Law Rep. 565; Gayle v. Riggs, 27 Ky. Law Rep. 618; Miller v. Pettit, 32 Ky. Law Rep. 337.

S. R. CREWDSON for appellee.

We contend from the decisions, for the following principles, to-wit:

1. Passways may be acquired by the individual either by purchase or prescription.

2. Public ways may be acquired by prescription, purchase or condemnation.

3. Public ways acquired by prescription differ from private passways in this, that there must be a public necessity for public ways.   (See Potter v. Mcgruder, 30 Ky. Law Rep. 276.)

4. "No public road can be laid out by law, by condemnation, unless there exists a necessity for it, and when the public appropriates a route for their travel, it must be because there was some necessity for it."

5. It requires the same claim of use, though not the necessity, for a private, as a public passway by prescription, but the permissive use by the owner of the land will never ripen into a rightful privilege contrary to the owner's will.

6. This is an attempt to open the road in question on the ground that it was dedicated to the public by long use, that it is a public way by prescription.

### AUTHORITIES CITED.

Potter v. Magruder, 30 Ky. Law Rep. 276; Prewitt v. Hustonville Cemetery Co., 31 Ky. Law Rep. 127; Smith v. Pennington, &c., 28 Ky. Law Rep. 1284; Roberts v. Williams, 28 Ky. Law Rep. 1084.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellants, Trimble, Crocker, Riggins, and Empson, filed their petition in equity against the appellee, King, in which they sought to require him to remove the obstruction in and upon a passway, to the use of which they alleged they and the public were entitled. It appears from the evidence that H. M. Trimble for many years prior to 1903 owned the land over which the passway in controversy extended, and that for 50 years or more it was open to the public and free from gates or other obstruction, and so remained until about 1898, when a tenant or lessee of Trimble erected two gates across it, one at each end; but the erection of these gates did not interrupt the travel, which continued, to some extent at least, until the way was closed to the public by appellee. There is some conflict in the evidence as to whether these gates were put up by the consent of Trimble or not. At any rate, they were there when appellee purchased the land from Trimble in July or August, 1902, and when he took possession under his purchase in January, 1903. A few months after appellee took possession, he removed the gates, put several fences across the passway, thereby preventing travel over it, and soon afterwards cleaned up the old roadbed, stopped up the gullies in it, and made it a part of his farm. The fences were not placed across the passway especially for the purpose of stopping travel on it, but rather to carry out appellee's plan in dividing up his farm into fields. In addition to this, at a point where there was a low place in the passway, he made a large and valuable

pond at considerable expense, so that, if the passway were now opened, it would be necessary, in order to protect his farm, to build a fence on each side of the passway, rearrange the fencing generally, and change the passway where the pond is situated from its old location.

The suit was filed in April, 1906, more than three years after appellee built the fences across the passway effectually obstructing it, and more than two years after the pond was made, the roadway cleaned out, and filled up so as to make it a part of the adjoining land, and the fencing on his farm generally rearranged to conform to the plan adopted after the passway was closed and had become a part of the adjacent fields. The appellants lived near to or adjoining appellee's land, and were fully apprised at the time of the fact that he had closed the way and also of the other changes and improvements made. Indeed, these facts were known generally, not only by appellants, but by all others in the neighborhood, or who had any interest in the road remaining open; but no objection was at any time made by any person until this suit was filed. No effort of any description was resorted to to prevent the closing of the road or to warn appellee of the risk he took in making the improvements following the closing. He was permitted, without protest or objection, to expend large sums of money in cleaning and filling up the old roadway, building fences, and the pond, and not until nearly three years afterwards notified that an effort would be made to open the road, which, if successful, would cause him to suffer a loss estimated by more than one witness at $1,000. An examination of the evidence satisfies us that the reason no protest or objection was made to closing the road was because

it was of little use or benefit to the public generally, or indeed to any individuals except the appellants Trimble and Riggins. As to them, the road was convenient, but not necessary. They had and have ways of ingress and egress over other roads, but the distance is not quite so short as if they could go through King's farm. It is also apparent that, although for many years this road was generally used, for several years immediately preceding its closure by King its use had greatly diminished. So much so that when King purchased the land the road, in places, had grown up in bushes and briars, and, in others, gullies rendered it difficult to travel. Assuming that appellants, and the large number of witnesses who testified in their behalf, are the only persons interested in opening this passway—and we think this assumption is well founded—the question is: Are they estopped by their conduct from now seeking to have this road opened, and thereby subjecting King to great expense and trouble, causing him to lose the time and money expended in rearranging his fencing, digging the pond, clearing up, and rendering tillable this road. We think they are, and, for the purpose of making plain the ground upon which we intend to rest our conclusion, it may further be assumed that King had no right to close or obstruct the passway as the time he did so, and that if the appellants, or any one else interested in keeping the road open, had taken proper and timely action, King could have been prevented from interfering with the use of the road by the public or those members of it who might desire to travel it.

This passway was an easement to the use of which the public generally was entitled. The long and uninterrupted enjoyment of it gave them the privilege

of using it as a matter of right not dependent upon the permission of the owner of the soil, but we apprehend that persons who have an easement such as this may be estopped from denying the right of the owner of the land over which it runs to close it. The doctrine of estoppel is far reaching in its effect, extending to real as well as personal estate, and embracing almost every enterprise in which men may be engaged. In a general way, and with particular reference to its applicability to the state of facts here presented, it may be said to rest upon the doctrine that a person who has induced another to believe and act in a certain manner will not afterwards be permitted to prejudice or injure such person because of the acts or things that he did under the belief that they were consented to. It should be further said that the acts that will operate as an estoppel must generally be made with full knowledge of the facts by the party to be estopped. Or, to put it in another way, a person will not usually be estopped by his acts, unless he understands his rights and actively participates or silently acquiesces in conditions that will operate to deprive him of these rights. In Am. & Eng. Ency. of Law, vol. 11, p. 428, this principle is well put in the following language: "It may be stated as a general rule that if a person having a right, and seeing another person about to commit or in the course of committing an act infringing upon that right, stands by in such a manner as really to induce the person committing the act, and who might otherwise have abstained from it, to believe that he consents to its being committed, he cannot afterwards be heard to complain of the act." In Alexander v. Woodford Springs Lake Fishing Co., 90 Ky. 215, 14 S. W. 80, 12 Ky. L. R. 107, a case in many of its

substantial features like the one at bar, the court said:
"There may be an equitable estoppel such as to pre-
vent the real owner from interferring with an ease-
ment created by an entry and an expenditure of money
by reason of the owner's silence or consent, where the
party entering has no other means or redress. If one
stands by and sees another build a house on his land,
the latter acting in good faith and believing that it be-
longs to him, will the real owner be permitted to stand
by and see the house erected and then assert his title
for the first time? Equity will prevent him from
speaking when as a conscientious man he should
remain silent." In the same case the court quoted
with approval the following from Herman on Es-
toppel: "When a man with full knowledge, or at
least with sufficient notice, or means of knowledge,
of his rights and of the material circumstances of
the case, freely and advisedly does anything that
amounts to a recognition of the transaction, or acts
in a manner inconsistent with its repudiation, or lies
by for a considerable time and knowingly and de-
liberately permits another to deal with property or
incur expense under the belief that the transaction
has been recognized, the transaction, although orig-
inally impeachable, becomes unimpeachable in
equity." In Foster v. Shreve, 6 Bush, 519, the court
said: "If a party has an interest to prevent an act
being done, and acquiesces in it, so as to induce a
reasonable belief that he consents to it, and the
position of others is altered by their giving of credit
to his sincerity, he has no more right to challenge
the act to their prejudice than he would have had it
been done by his previous license." If a person may
be divested of title to land by estoppel—and of this
there is no doubt—we see no reason why he may not

be deprived of the right to an easement upon land. Wright v. Williams, 77 S. W. 1128, 25 Ky. Law Rep. 1377.

Applying to the facts of this case the principles announced in the foregoing authorities, we have no difficulty in determining that they may make out a perfect case of equitable estoppel. The parties complaining knew they had a right to the passway. They saw, without protest or objection, appellee close it. They saw the expenditure by him of large sums of money in improvements induced by the closure, and they will not now be heard to dispute his right to do that which they tacitly consented he might do.

The rule we have announced would not, of course, apply to a public county road, nor would the fact that a few persons might be estopped by their conduct from complaining of obstructions in a passway work an estoppel on others of the public who had the right to use it, but who did not actively participate or tacitly consent to its being closed. The estoppel upon which this action is rested must be confined to cases presenting facts like the one before us; that is, to cases in which it appears that all the persons who use the passway and for whose benefit it is kept open consented to having it closed by failing to speak when it was their duty to speak.

Wherefore the judgment of the lower court is affirmed.