## Fitzpatrick v. Baker, et al.

(Decided October 8, 1913).

### Appeal from Letcher Circuit Court.

1.  Vendor and Purchaser—Records—Notice.—Where a deed is recorded and indexed in the county court clerk's office of the county wherein the land thereby conveyed is located, subsequent purchasers are charged with notice of the claim of title to such land by the grantee therein.

2. Estoppel—Equitable Estoppel.—Equitable estoppel extends to real and personal property, and rests on the theory that a person who has induced another to believe and act in a certain manner, will not afterwards be permitted to prejudice such person because of acts done under the belief that they were consented to. Such person, however, will not, as a general rule, be estopped by his acts, unless he understands his rights and actively participates or silently acquiesces in conditions operating to deprive him of such rights.

3. Estoppel—Negligence As Ground of Estoppel.—Negligence to amount to an estoppel must be the neglect of some duty owing by a party to another or to the general public, and be also the proximate cause of leading another into mistake.

4. Ejectment—Estoppel As Defense—Evidence—Weight and Sufficiency.—In an action of ejectment to which defense of estoppel is interposed on the ground that the claimant of the land knew and acquiesced in defendant's purchase, possession and improvement thereof, evidence examined and held, to fail to show that plaintiff had actual knowledge of the sales or conveyances of the land to defendants, or that he induced them to purchase or take possession of the land, or that his delay in asserting title to same was the proximate cause or inducement to defendants to purchase and possess the land.

5. Vendor and Purchaser—Improvements.—Where lasting improvements made by a purchaser of land did not increase its vendible value to an amount exceeding its rental value during the time it was in his possession, he cannot, upon eviction because of failure of title, charge the holder of the legal title with the value of such improvements.

6. Vendor and Purchaser—Mortgages—Ejectment.—A purchaser in possession of land bought at decretal sale to enforce a valid mortgage lien thereon, in action of ejection, can demand of the claimant to the title, payment of the mortgage debt and its accrued interest, before eviction by the holder of the superior title.

D. D FIELDS & SON for appellant.

JOHN J. WAKEFIELD for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

On January 20, 1898, J. J. Fitzpatrick executed to James P. Lewis his note for $281.13 and, to secure its payment, gave him a mortgage on a tract of land in Letcher County, which had been conveyed to the mortgagor by his father, James B. Fitzpatrick January 29, 1896. After mortgaging the land to James P. Lewis, J. J. Fitzpatrick. on February 19, 1898, conveyed it by deed of general warranty to the appellant, John D. Fitzpatrick. This deed, as well as that from James B. Fitzpatrick, and the mortgage from the latter to James

P. Lewis, was duly recorded in the office of the clerk of the Letcher County Court.

On July 25, 1898, the note and mortgage lien, which had been executed by J. J. Fitzpatrick to James P. Lewis, were assigned by the latter to his brother, J. J. Lewis, who, on the same day, filed suit thereon in the Letcher Circuit Court, seeking judgment on the note and a sale of the land to satisfy the mortgage lien given to secure its payment. The appellant, John D. Fitzpatrick, to whom the mortgagor, J. J. Fitzpatrick, by deed conveyed the land shortly after the execution of the mortgage, was not made a party to the action. Judgment was rendered by default against J. J. Fitzpatrick for the amount of the note and for a sale of the land in satisfaction thereof; thereafter, the land was sold by the master commissioner, at which sale J. J. Lewis became the purchaser at a price sufficient to pay the mortgage debt and cost of suit and, on December 5, 1898, in pursuance of an order of court, the land was conveyed to him by a deed executed by the commissioner. The purchaser, J. J. Lewis, in April, 1899, sold and conveyed the land by deed to R. B. Bentley, who, in October, 1900, in conjunction with his wife and Joseph Holcomb and his wife (Joseph Holcomb having in the meantime claimed to have acquired some interest in it), sold and, by deed of special warranty, conveyed the land to William J. Johnson and Rebecca Johnson; on December 10, 1904, Johnson and wife sold and by deed conveyed the land to S. E. Baker and Helen C. Baker, and the Bakers later sold and by deed conveyed a portion of it to W. E. Hammond.

June 1, 1911, the appellant, John D. Fitzpatrick, brought this action in the Letcher Circuit Court, in which he claimed title to the land under the deed from J. J. Fitzpatrick of February 19, 1898, alleged his right to the possession thereof, and attacked the validity of the judgment and sale in satisfaction of the mortgage, which had been executed by J. J. Fitzpatrick to James P. Lewis and the various deeds thereafter made attempting to convey the land to the several purchasers thereof, including the appellees, S. E. Baker and Helen Baker and W. E. Hammond. The petition admitted, however, the validity of the mortgage on the land, which had been executed by J. J. Fitzpatrick to James P. Lewis, tendered to the appellees payment of the mortgage debt, with its accrued interest, and ended with a

prayer that they be required to accept same, and that appellant be adjudged the owner, and entitled to the possession of the land.

Appellees, by answer, denied appellant's ownership of the land, but admitted the execution of the deed by J. J. Fitzpatrick conveying it to him, alleging, however, that neither they nor their vendors did, in fact, know of the existence of the deed, or that it was a matter of record, at the time of the several sales and conveyances of the land after its purchase by J. J. Lewis at the decretal sale resulting from the enforcement of the mortgage lien. The answer set up the further defense that appellant, although not a party to the suit to enforce the mortgage lien, had knowledge thereof and of the decretal sale, and also of the several conveyances subsequently made of the land; that he knew of the possession of the land by the several purchasers down to, and including, the appellees, but never made claim of title to the land or denied their right to same prior to the bringing of this action, by all of which he was estopped to assert title to it in himself, which estoppel was formally pleaded as a bar to his right to recover the land. It was further alleged in the answer that appellee, S. E. Baker, and Johnson, his vendor, made upon the land lasting and valuable improvements, consisting of a cabin, the planting of a small orchard, some fencing, and the clearing of eight or ten acres of land, which improvements were made, as alleged, with the knowledge of appellant and without objection from him.

The affirmative matter of the answer was controverted by reply, and following the taking of proof and submission of the case, the circuit court, being of opinion that the plea of estoppel constituted a good defense to the action, by the judgment rendered, dismissed the petition at appellant's cost. From that judgment, he has appealed.

The only question presented for decision on the appeal is: Did the allegations of the answer as to the estoppel and the evidence in support thereof authorize the judgment rendered by the circuit court? The evidence relied on to support the plea of estoppel is found in the depositions of the appellee, S. E. Baker, William J. Johnson, J. J. Lewis and James P. Lewis, none of whom testified that appellant was present at, or knew of, the sale of the land in satisfaction of the mortgage debt in favor of J. J. Lewis, or that he knew, or was present,

when any of the deeds subsequently conveying the land until it went into the possession of appellees, was executed. In a general way, they merely proved his knowledge of the possession of the land by Johnson, J. J. Lewis and S. E. Baker, that is, that he knew of their residing upon and cultivating it, because he lived a part of the time on the farm of his father, a half mile distant, until four or five years before the institution of the action, when he removed to Whitesburg, the county seat of Letcher county. The testimony of these witnesses also tended to show that, while W. J. Johnson lived on the land, appellant, who was about the age of his sons, sometimes visited them at his home; and that, during an illness of the witness, he attended him as his physician for several days. It was also shown by the testimony of Baker that appellant visited his son occasionally while the latter resided on the land. It is apparent, however, from the testimony of James P. Lewis that appellant was probably less than twenty-one years of age when the land in controversy was conveyed to him by J. J. Fitzpatrick and at the time of its sale in satisfaction of the mortgage debt, for Lewis testified that, about the time of the decretal sale of the land, and for three or four years thereafter, appellant, then a boy, was attending school at Prestonsburg, and that after the schooling obtained there, he was away from home from three to four years attending a medical college at Louisville; and while, at intervals, he was at his father's home during these years and during some of his vacations taught school, it is fairly apparent that, for practically eight years following the conveyance of the land to him very little of his time was spent in the neighborhood. According to the evidence of all the witnesses named, appellant began the practice of his profession as a physician in the neighborhood of the land about 1906, and, while there, lived on the farm formerly owned by his father, but that he remained there but a short time, as he soon changed his residence to Whitesburg where he had resided for four or five years before suit was brought by him for the recovery of the land, which was June 1, 1911.

None of the evidence appearing in the record conduces to show that appellant had any actual knowledge of the pendency of the suit to enforce the mortgage lien, of the sale and conveyance of the land in satisfaction thereof, or of any subsequent sale or conveyance that

was made of it. It also fails to show that appellees or
any of their vendors were induced, by anything that he
said or did, to purchase the land or to take possession
thereof. Upon the other hand, it must be presumed that
appellees and their vendors knew all the time of his
claim of title, because the deed under which that claim
is asserted bears date February 9, 1898, and was put to
record and duly indexed on March 25, 1898, in the office
of the clerk of the Letcher County Court.

While there is no explanation appearing in the record
of the delay upon the part of appellant in bringing suit
to recover the land, such delay is not, of itself, or in con-
nection with the evidence introduced by appellees as
tending to show his knowledge of their claim to and pos-
session of the land, sufficient to constitute an equitable
estoppel that would operate to bar its recovery by him.

"Equitable estoppels are so called not, however, be-
cause they are recognized as peculiar to equitable tribu-
nals, but because they arise upon facts which render
their application in the protection of rights equitable
and just. The doctrine is recognized in the courts of
common law just as much as in courts of equity, although
it was first administered as a branch of equity jurispru-
dence." 16 Cyc., 682.

In Pomeroy's Equity Jurisprudence, Vol. 2, Sec. 804,
an equitable estoppel is thus defined:

"An equitable estoppel is the effect of the voluntary
conduct of a party whereby he is absolutely precluded
both at common law and in equity from asserting rights,
which perhaps have otherwise existed, either of property
or contract or of remedy as against another person who
has in good faith relied upon such conduct and has been
led thereby to change his position for the worse and who
on his part acquires some corresponding right, either of
property, or contract or of remedy."

At most, appellees' claim of estoppel rests upon the
theory that they have obtained some sort of right to the
land in controversy, because of appellant's negligence
in failing to earlier assert his claim to it. But, if it can
be said that appellant has been negligent in asserting
his title to the land, such negligence cannot be regarded
as the proximate cause leading appellees, or their ven-
dors, into mistake. On this subject, in 16 Cyc., 772, it is
said:

"A recognized proposition as to estoppel en pais is,
that if in the transaction itself which is in dispute, a

party has led another into the belief of a certain state of facts by conduct of culpable negligence calculated to have that result and such culpable negligence has been the proximate cause of leading, or has led, the other to act by mistake upon such belief to his prejudice, he cannot be heard afterward as against that other to say that the state of facts referred to did not exist. Negligence, to amount to an estoppel, must be in the transaction itself and be the proximate cause of leading the party into mistake, and also must be the neglect of some duty which is owing to such party or to the general public.''

The only negligence here complained of on the part of appellant is that he unreasonably delayed asserting his title to the land, but it is not alleged or shown how such delay operated to the prejudice of appellees or their vendors. They were not innocent purchasers, without notice of his title, for his deed was all the while a matter of record, of which they had to take legal, if not actual, notice. The alleged negligence grew out of no transaction they had with him, nor of any act on his part connected with their purchase or attempted purchase, of the land. His negligence, therefore, cannot be said to be the proximate cause of, or inducement to their purchase of the land, for which reason it cannot be relied upon as an estoppel.

In Cropper v. Gaar's Ex., 151 Ky., 376, one of the questions raised was, whether the alleged interest of a devisee under his father's will was subject to execution, (there having been with his knowledge an attempted levy upon and sale of it under an execution in favor of a creditor) and plea of estoppel by the latter growing out of the failure of the devisee to object to such levy and sale. While it was held that the interest of the latter in the estate devised was not subject to execution, because only a life estate in a money legacy, we said with respect to the estoppel:

''There is no merit in the estoppel pleaded by appellees. The fact that Edward Kendall made no objection to the attempted levy of the Smith execution, or the sale thereunder, or that he thereafter took no steps to have the levy and sale quashed gave no validity to the void levy or sale; nor was there any act upon his part which can be said to have constituted an election to take his interest under the will in land instead of its proceeds; indeed in view of the concluson expressed in Porter v.

Porter, &c., supra, an election to do so could not have been made by him, without a like election on the part of the other devisees under the will.''

The cases cited by counsel for appellees are not in conflict with our conclusion that the doctrine of equitable estoppel is not applicable in the instant case. They rest upon different facts. One of the cases relied on is that of Trimble v. King, 131 Ky., 1, involving a controversy over a passway; and while it was therein held that the doctrine of equitable estoppel extends to real and personal estate, it was also held that it rests on the theory that a person who has induced another to believe and act in a certain manner, will not afterwards be permitted to prejudice such person because of the acts done under the belief that they were consented to. The opinion also announces the principle that one will not, as a general rule, be estopped by his acts, unless he understands his rights and actively participates or silently acquiesces in conditions operating to deprive him of such rights. With respect to this doctrine, the opinion quotes with approval the following excerpt from Vol. 11, page 28, Am. & Eng. Enc. Law:

''It may be stated as a general rule that if a person having a right, and seeing another person about to commit or in the course of committing an act infringing upon that right, stands by in such a manner as really to induce the person committing the act, and who might otherwise have abstained from it, to believe that he consents to its being committed, he cannot afterwards be heard to complain of the act.''

In Alexander v. Woodford Spring Lake Fishing Co., 90 Ky., 215, involving, as in Trimble, &c. v. King, supra, an easement, the estoppel was sustained because the appellant, who was seeking to enjoin its use by the appellee, not only consented to the creation of the easement, but also participated equally with the appellee in its enjoyment.

It is, however, insisted for appellees that the estoppel relied on in this case should apply, because appellant, without objection, permitted them and their vendor, Johnson, to make certain improvements on the land. It is questionable from the evidence whether the alleged improvements were made during appellant's presence at his home or in the neighborhood. At any rate, it does not show that he had actual knowledge of the improvements at the time they were made. In brief, the evi-

dence with reference to the improvements falls short of placing him in a situation which required him to object to them; moreover, the improvements, aside from the clearing of a few acres of the land, were of little value, the small cook room or meat house and little fencing were erected at small cost, and of the small orchard set out only three of the trees ever bore fruit. It is likewise true that the small clearing on the land was apparently done at little expense, as the timber removed was small, consisting mainly of undergrowth. Furthermore, it is not apparent from the evidence that the improvements made on the land increased its vendible value to any appreciable extent; and in the absence of such proof, no reason is apparent for charging appellant with their value. In any event, it is obvious that the improvements, such as they were, did not increase the vendible value of the land to an amount exceeding its rental value during the years it has been in the possession of appellees and their vendors.

Although alleged in the answer, no fraud whatever in the conveyance from J. J. Fitzpatrick was shown by the evidence; indeed, no effort was made to prove such fraud, and as the deed to appellant from J. J. Fitzpatrick vested in him the title to the land, subject to the lien created thereon by the mortgage the latter executed to James P. Lewis, and appellant was not made a party to the action to enforce the mortgage lien, or divested of his title to the land by the judgment or decretal sale in that case, the vendee of the purchaser of the land at the sale in satisfaction of the mortgage debt can do no more than demand of appellant the payment of the mortgage debt and its accrued interest.

In Nickels v. Mineral Development Co., 31 Rep., 1224, we held that as to a purchaser at such a judicial sale the doctrine of caveat emptor applies. If the necessary parties are not before the court, he buys at his peril.

As, in our opinion, the circuit court erred in applying in this case the doctrine of equitable estoppel, the judgment is reversed and cause remanded, with directions to the circuit court to enter such judgment as will require appellees to surrender the land to appellant upon his payment to them of the amount of the mortgage debt for which the land was sold at the decretal sale, and its accrued interest. A time should be fixed in the judgment for such payment and direct that if it be not made within such time, the land, or enough thereof for the purpose, shall be sold to pay same.