## Bush, et al. v. Chenault's Executor.

(Decided May 15, 1917.)

## Appeal from Wolfe Circuit Court.

1. Estoppel—When Can Be Pleaded.—Generally speaking, the doctrine of estoppel rests on the ground that a party will not be heard to admit or deny a fact, the existence of which he has once denied or admitted, to the prejudice of another who was induced to act upon the truth of his admission or denial.

2. Estoppel—Party Relying on Must Be Prejudiced.—Before the doctrine of estoppel can be invoked it must be made to appear that the person relying on the estoppel was prejudiced by the passive or active conduct or representations of the person against whom he pleads estoppel.

3. Estoppel—When Not Available Against Person on Account of His Testimony.—The fact that a person as a witness testifies in a suit to which he is not a party that he is not the owner of the land in controversy will not estop him from afterwards asserting ownership to it.

4. Estoppel—Testimony of Witness—Effect of.—While a witness, who testified in a suit to which he was not a party, that another person was the owner of the land in controversy, will not be estopped from thereafter setting up title to the land, he cannot add to his possessory title the time consumed in the litigation in which he testified he did not own the land.

5. Trial—Instructions—Special Findings.—In a complicated suit over the ownership of land, where several parties are interested, claiming under different titles, it is proper to submit special findings to the jury.

G. W. GOURLEY, A. F. BYRD and J. P. HOBSON & SON for appellants.

HAZELRIGG & HAZELRIGG, KELLY KASH, J. B. WHITE, SAM HURST, G. B. STAMPER, E. E. HOGG and J. D. ATKINSON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In January, 1914, the appellee, J. B. White, as executor of E. C. Chenault, filed his petition in equity against W. B., Jake, Jeff, W. L., C. S., Fielden, and Walter Bush, in which it was averred, in substance, that E. C. Chenault, at the time of her death, in 1913, owned a boundary of land in Wolfe county "beginning at the mouth of Standing Rock fork of Graining Block fork of Red river; thence an eastward course to the sandstone cliff opposite said

fork; thence down said sandstone cliff and with it to Hotel Cave Branch; and up said branch with said cliff to the second large right-hand fork thereof; thence down said fork and said branch to the mouth of same; thence down Graining Block fork with the line of the Bush and Ponder tract to a point opposite Yellow Rock; thence to Yellow Rock to the line of M. Hudson; thence with ridge southwestward between the waters of Bee Branch and Sinking Branch on one side and White's Branch on the other to a point known as the land of the Trabue tract of land; thence to Standing Rock; thence with public road back so as to include the premises formerly occupied by Betsey Spencer and to said Standing Rock fork; thence down said fork with its meanders to the place of beginning.''

It was further averred that the executor was now in the actual possession of said land and that he and his testatrix had been in the actual, continuous, notorious and adverse possession of the same for as long as thirty-five years, claiming and holding it to a well defined and well marked boundary. That the defendants, the Bushes, were casting a cloud upon the title of the executor to the land by asserting that he had no title or right thereto, but that the title and right of possession were in them. That they had been continually committing divers trespasses upon the land and committing waste thereon. That they were each insolvent, and judgments and damages against all or each of them would be worthless.

In a separate paragraph it was alleged that in an action in the Wolfe circuit court by Quisenberry and others, as plaintiffs, against E. C. Chenault, as defendant, to which action W. L. Bush was a party and the other Bushes were witnesses, a judgment was rendered in August, 1910, adjudging the land hereinbefore described to E. C. Chenault, and quieting her title thereto, and awarding her a writ of possession against Quisenberry, W. L. Bush and all other persons who had entered on said land pending the litigation and since the year 1893. It was further averred that in the year 1906 E. C. Chenault, under a writ of possession, dispossessed the Bushes from the boundary  of land described and was placed in the possession thereof, but that notwithstanding this they afterwards entered upon the land and committed trespasses thereon. The prayer of the petition was that the title of the executor to the land and his possession

thereof be quieted, and that the Bushes be enjoined from entering upon the land, or trespassing thereon, or asserting or claiming title thereto.

To this petition the defendants, the Bushes, filed an answer and counter-claim in which, after denying that the executor had either title or right of possession to the land, they set up title in themselves. They also denied that they were parties to or in any manner estopped by the orders or judgments in the suit of Quisenberry against Chenault.

After this there was a trial of the issues before a jury and a verdict in favor of the Bushes, upon which there was a judgment dismissing the petition. It further appears that this verdict and judgment was set aside by the court and a new trial granted to the executor, and thereupon the case was transferred to the equity docket. Soon afterwards the Bushes moved the court for an issue out of chancery to try the issue as to who was the owner and entitled to the possession of the land, which motion was overruled by the court in an order reciting "in view of the fact that the case to settle the title and possession of the land between the Quisenberrys and Chenaults, was commenced in 1892-3, in which as many as four jury verdicts were rendered and the defendants, heirs of Llewellyn Bush, testified as witnesses in said case, without claiming the land, while defendant C. S. Bush stood by living in the immediate vicinity and attempted to acquire title through said heirs by conveyance from Chester Brothers, who were on the land under those from whom plaintiff claims, and that one of the defendants was the agent for the parties litigant against the plaintiff's testatrix and some of the defendants, parties to the cases relating to the litigation, and that all the verdicts adverse to plaintiff's claim have been set aside; that this is a case of equitable cognizance with questions of estoppel, and the effect of former opinions of the Court of Appeals in cases to settle the title to said land to ·be construed and determined, the motion for an issue out of chancery is therefore overruled."

Thereafter the case having been heard by the court, there was a judgment in favor of the executor, holding that he was the owner and entitled to the possession of the land, and the Bushes were enjoined from trespassing upon the land or cutting any timber therefrom, and a writ of possession was awarded against them. From the

order of the court overruling the motion for an issue out of chancery and the judgment in favor of the executor, this appeal is prosecuted.

There appears to be no dispute about the fact that the land here in controversy is the identical land that was in dispute in the long litigation between Quisenberry and Chenault, and it is important to keep in mind that the Chenault who had that litigation with Quisenberry is the same Chenault whose executor is now posecuting this suit against the Bushes and that the Bushes, after Quisenberry had failed in his litigation with Chenault to recover the land, set up that they were the owners of it. In the litigation between Chenault and Quisenberry, the latter, claiming to be the owner of the land, brought suit for its recovery. The defense of Chenault was a denial of title in Quisenberry and an assertion of title in herself. On a trial of the case there was a verdict and judgment for Quisenberry, and Chenault appealed. The opinion reversing the case was handed down in 1897, and may be found in 19 Ky. L. R. 1632. In that case both parties relied on a paper as well as a possessory title, and in the course of the opinion the court said: "The appellants (Chenault) on the trial showed that they were in the actual possession of the land, living on same when the suit was filed. They exhibited patents from the state of Kentucky issued in 1876 and 1877 upon surveys made and orders of the county court made in the year 1874." So far as the title of Quisenberry was concerned, the court said: "There is no proof that he was in the actual possession of this land under the papers referred to, claiming to a marked or natural boundary as represented by the deeds." The judgment was reversed for error in the instructions, and it seems that there was another trial and another verdict and judgment for Quisenberry, from which Chenault prosecuted an appeal. The opinion in the second case may be found in 21 Ky. L. R. 1771. In the course of the opinion the court said, in substance, that Quisenberry as plaintiff undertook to deduce a record title from the Commonwealth. This title, however, was manifestly defective, and the trial court properly omitted to instruct the jury as to the record title relied upon. The judgment was again reversed for errors in the admission of evidence and in giving instructions. On another trial of the case there was a verdict and judgment in favor of Quisenberry, followed by an appeal by

Chenault, and the opinion in this third appeal is reported in 26 Ky. L. R. 462. But the judgment was again reversed, and on a return of the case the circuit court took the case from the jury and dismissed the petition of Quisenberry. From this judgment Quisenberry appealed, and in an opinion that may be found in 30 Ky. L. R. 229, it was held that the issue should have been submitted to a jury, but that if upon a retrial of the case the evidence was the same as that introduced upon the former trial, the court should give a peremptory instruction to find for Chenault. Following this appeal there was another trial, and the court instructed the jury to find a verdict for Chenault. From the judgment on this verdict Quisenberry prosecuted an appeal, and in an opinion that may be found in 143 Ky. 312, the judgment of the lower court was affirmed, and this ended the litigation between Chenault and Quisenberry, and finally determined as between them that Chenault was the owner of the land.

After this litigation between Chenault and Quisenberry, which extended for fifteen years or more, had been ended by a final decision in favor of Chenault, the Bushes, as we have stated, set up ownership to the land, and the questions to be decided in this appeal are, are the Bushes estopped by their conduct in the litigation between Chenault and Quisenberry, in which some of them testified that Quisenberry was the owner of the land, from now asserting title to it in opposition to Chenault, and should the issues have been submitted to a jury?

It is the contention of counsel for Chenault that as some of the Bushes in the litigation between Chenault and Quisenberry disclaimed any interest in this land and testified that Quisenberry was the owner of it, and others stood by without asserting title, they are all now estopped by their conduct and their evidence from disputing the title and ownership of Chenault. It is further contended in behalf of Chenault that as the Bushes on the trials between Chenault and Quisenberry testified that an agreed line had been established between Quisenberry and Llewellyn Bush, under whom these present Bushes claim title, by which it was agreed that Quisenberry owned the land north of Standing Rock fork and the Bushes the land south of it, the evidence as to this agreed line and the judgments in the cases of Quisenberry against Chenault conclusively establish the fact that the

Bushes did not and do not own any land north of Standing Rock fork.

On the other hand, counsel for the Bushes insist that although some of the Bushes who are now setting up claim to the land did testify as to the establishment of an agreed line between Quisenberry and the Bushes, and did testify in the litigation between Quisenberry and Chenault that Quisenberry was the owner of the land, they are not estopped by this conduct from now asserting title to it in this case. And it is a further contention that the question at issue between the Bushes and Chenault should have been submitted to a jury.

The Bushes who are parties to this suit and appellants on this appeal, as shown by the statement, are W. B., Jake, Jeff, C. S., Fielden, and Walter Bush. C. S. Bush claims to be the owner and entitled to the possession of 415 acres of the southern part of the land in controversy, while Jake Bush claims to be the owner and entitled to the possession of the northern part of the land in controversy, and the Bushes who are described as the "Bush Heirs" claim to be the owners and entitled to the possession of 516 acres that lie between the land claimed by C. S. Bush on the south and the land claimed by Jake Bush on the north. Jake Bush is a son of Jeff Bush, whose father was Llewellyn Bush. C. S. Bush is not a lineal descendant of Llewellyn Bush and does not claim title by descent from him. The other appellants, W. B., Jeff, Fielden, and Walter Bush, claim to have inherited the land known as the "Bush Heirs" land by descent from Llewellyn Bush, who died intestate.

It also appears that Llewellyn Bush left surviving him his widow, Martha Bush, who is now dead, and some ten children, but of these children and their children only W. B., Jake, Jeff, Fielden and Walter are parties to this suit.

It does not appear that C. S. Bush was a witness in the suits between Quisenberry and Chenault, although he claims the land as a remote vendee of Llewellyn Bush. Jeff Bush, Jake Bush and Fielden Bush were witnesses for Quisenberry in the suit with Chenault.

In this case we will not undertake in any manner to determine the title to this land as between these litigants, or express any opinion as to how the case should be decided on a trial on its merits. We think this opinion may be confined to four questions: First, are the Bushes who

testified for Quisenberry in the suit between Chenault and Quisenberry now conclusively estopped to assert title to the land that in testifying for Quisenberry they said was owned by him? Second, are those heirs who stood by with actual knowledge of the litigation between Quisenberry and Chenault and who, as we may presume from all the circumstances, knew what the issues were in that litigation, but who did not assert title in themselves, conclusively estopped to now claim ownership of the land? Third, the effect of the evidence in the case between Quisenberry and Chenault as to the establishment of an agreed line between Quisenberry and the Bushes? Fourth, whether the issues in this case are of equitable cognizance or for trial before a jury.

The first two of these questions may be disposed of together, as they involve substantially the same question. Briefly re-stating it in illustrative form, it is this: If there is a litigation between "A" and "B" as to the ownership of a tract of land, and in this litigation "C" should testify that "A" owned the land and should refrain from in any manner setting up title in himself, will "C," after it has been adjudged that "B" is the owner of the land, be conclusively estopped from asserting title to it himself in opposition to the title of "B"? This is the position occupied by those of the Bushes who testified for Quisenberry in the litigation with Chenault and who are now asserting title to the land in themselves in opposition to the title of Chenault.

We do not think the mere fact that the Bushes, or some of them, testified for Quisenberry in the case of Quisenberry against Chenault was sufficient to conclusively estop them from asserting title as against Chenault. The doctrine of estoppel, generally speaking, rests on the ground that a party will not be heard to admit or deny a fact, the existence of which he has once denied or admitted, to the prejudice of another who is induced to act upon the truth of his admission or denial.

In 11 A. & E. Ency. of Law, page 421, it is thus stated: "It is a well settled rule of equity which has been adopted by the courts of law that where 'A' has by his acts or representations, or by his silence when he ought to speak out, intentionally or through culpable negligence, induced 'B' to believe certain facts to exist, and 'B' has rightfully acted on this belief, so that he will be prejudiced if 'A' is permitted to deny the existence of

such facts, 'A' is conclusively estopped to interpose a denial thereof.'' Illustrations of this principle are found in cases where the owner of property, real or personal, stands by and voluntarily allows another to purchase the property, or to expend money thereon, under the belief that he is the rightful owner thereof, in which case the person standing by will not afterwards be allowed to set up title in himself to the prejudice of the person who was misled by his silence or deceived by his representations. But in every case it must be made to appear that the person relying on the estoppel was prejudiced by the passive or active conduct or representations of the person against whom he pleads estoppel: Alexander v. Woodford Spring Lake Fishing Co., 90 Ky. 215; Trimble v. King, 131 Ky. 1; Fitzpatrick v. Baker, 155 Ky. 175.

Applying now these general rules to the facts of the case we have, we are unable to perceive in what respect Chenault was prejudiced by the declarations of the Bushes that Quisenberry owned the land, or by their failure to assert title in themselves, except to the extent that the effect of their testimony might have aided Quisenberry in defeating Chenault. Chenault did not acquire possession of this land on the faith of any representations made by the Bushes, nor was she induced to acquire title to it on account of the failure of any of the Bushes to speak when they should have spoken. The Bushes did not appear in the controversy between Chenault and Quisenberry until after the litigation between them had commenced, or until after Chenault had, as she claimed, become the owner of the land.

But it is said in the brief of counsel for Chenault that, in the litigation with Quisenberry, Chenault could not have made the Bushes parties when they were testifying that Quisenberry owned the land, whereas if they had then set up title to it, Chenault could have made them parties and have had determined in that suit their ownership of the land; that on account of their attitude Chenault had long and expensive litigation with Quisenberry, and when that ended was beset with this litigation with the Bushes.

But this attitude of the Bushes only deprived Chenault of the opportunity to join them as defendants in the suit with Quisenberry, or bring a separate suit against them. If they had been parties to that suit, Chenault would have had on his hands then the same litigation

that the executor has now. Their conduct did not mislead Chenault in any manner to her prejudice. It merely postponed the litigation in which her executrix is now engaged. If the Bushes had remained silent and taken no part whatever in the litigation between Quisenberry and Chenault, it could hardly be contended that this course of conduct on their part would have denied them the right to set up their claim of ownership in the land, and the only difference between their silence and their testimony is that what they said as witnesses might have benefited Quisenberry in the hearing of the case before the jury or the court.

Of course the Bushes who testified in the case between Quisenberry and Chenault, or who lent their aid and assistance to Quisenberry for the purpose of establishing his ownership of the land, do not occupy a very favorable attitude in court when they now undertake to show that Quisenberry did not own the land but that they owned and now own it. This, however, only goes to affect their credibility and the weight that should be given to their evidence, which it does affect to a serious extent, but does not operate to work a conclusive estoppel.

If, however, any of the Bushes who testified for Quisenberry in the suit with Chenault were living on the land at the time the litigation between Quisenberry and Chenault was pending, neither these Bushes nor any person claiming under them will be allowed to add to any possessory claim of title they may assert in this case the period of time involved while the action between Quisenberry and Chenault was pending, or be allowed to assert any claim of adverse holding beginning earlier than the final termination of that litigation. If they were permitted in this case to rely on any possessory title during the pendency of that litigation for the purpose of defeating the title of the executor in this litigation, their conduct in testifying for Quisenberry would be manifestly prejudicial to the rights of the executor in this case because although his testatrix may have known that they were living on the land, their disclaimer of ownership would probably and reasonably have prevented her from instituting proceedings against them during the pendency of the Quisenberry litigation. And so if they were allowed in this case to compute the time the suit was pending in making up the period of adverse

holding, it would give them an advantage in this case which they should not have.

It also follows from what we have said that the Bushes who did not testify in the Quisenberry-Chenault litigation, but who knew it was pending and did not set up any claim themselves to the land, are not now by their silence or even by their acquiescence in the effort of Quisenberry to establish his title to the land, estopped to now assert title in themselves.

Neither are the Bushes who testified as to the agreed line conclusively estopped by their evidence from now asserting title to the land, although their testimony as to the agreed line seriously impairs their credibility as witnesses and the weight of their evidence, when they now undertake to deny that any agreed line was established, and deny that Quisenberry owned the land that they once said he did own. It is, however, competent for the executor to show that an agreed line was established between Quisenberry and the Bushes, and that under the arrangement in respect to this agreed line the Bushes renounced any claim they may have had to the land now in controversy.

And furthermore, if an agreed line was, as a matter of fact, established between the Bushes and Quisenberry, and under this agreed line Quisenberry was recognized by the Bushes as the owner of the land now in controversy, the existence of this fact may be shown for the purpose of establishing the further fact that the Bushes who so testified, or any person claiming under them, do not now own the land in controversy. The establishment of an agreed line between the Bushes and Quisenberry should have the same effect as the location of an agreed line between other parties who were in dispute as to the location of the line, and when parties have a dispute as to the location of a line and agree where the line shall be, this agreement is binding upon them as well as upon persons claiming under them. This rule should be applied to the Bushes not because they testified as to the location of this agreed line or because they stood by and recognized it as an agreed line, but on account of the fact, if it be a fact, that this agreed line was located and recognized by the parties as the agreed line between their lands.

We are also of the opinion that the issues in this case should have been submitted to a jury. But in view of

the complicated nature of the questions in the case and the different sources of title under which the Bushes claim respectively parts of the land, we think the court should submit special findings to the jury, so that the jury may be in a position to determine in a satisfactory way to themselves and the court the rights of the parties. To aid the court in submitting these special findings counsel on each side of the case should submit to the court such interrogatories as they think necessary to present fully and fairly all the issues in the case and in such form as that the jury may be enabled to make separate findings as to Jake Bush, C. S. Bush and the Bush heirs.

Wherefore, the judgment is reversed, with directions for a new trial not inconsistent with this opinion.