## Johnson, et al. v. Elkhorn Gas Coal Mining Company.

(Decided September 25, 1917.)

### Appeal from Floyd Circuit Court.

1. Deeds—Reservations—Land Reserved for Specific Purpose Cannot Be. Used for Any Other.—Where a grantor in selling a tract of land specified in the deed that "there is a reservation of one-fourth of an acre square around a graveyard on the hillside," the lot so reserved could not be used by the grantor for any other than burial purposes.

2. Deeds—Reservation Generally of Part of Land Conveyed—Effect of.—Where there is a general reservation by the grantor of a part of a body of land conveyed without specifying the purpose for which the reservation is made, the grantor may use the land reserved in any way he desires.

3. Estoppel.—Where a vendor, who reserved for a specific purpose a lot out of a tract of land conveyed by him, attempted to use it for another purpose without asking the consent of the vendee, the vendee was not estopped from asking the removal of buildings put on the lot because he did not object to their erection.

4. Estoppel—Essentials of.—Generally speaking, when the doctrine of estoppel is invoked the party relying on it must be able to show that he was acting in the good faith belief that he had the right to do what he was doing and that the other party by his acquiescence permitted him to incur expenses that he would not have incurred if objection had been made, or if he had known that he was not legally authorized to do what he was doing.

J. C. HOPKINS, W. W. WILLIAMS and ROSCOE VANOVER for appellants.

SMITH & COMBS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In 1913, J. J. Johnson and his wife sold and agreed to convey to the Beaver Creek Fuel Co. a tract of land containing 116 acres. The contract contained this condition:

"There is a reserve of one-fourth of an acre square around a graveyard on the hillside."

Pursuant to this contract, Johnson and his wife, shortly afterwards, and in the same year, executed a deed to the Beaver Creek Fuel Co. for the land described in the contract, and this deed contained the stipulation that "There is excluded from the above described tract the following described boundary around a grave"—the boundary containing the one-fourth of an acre being accurately described by metes and bounds, courses and distances.

Previous to the execution of the contract an infant child of Johnson had been buried on the plat of ground reserved as a graveyard. Subsequently the land conveyed to the Beaver Creek Fuel Co. came into the possession of the appellee, Elkhorn Gas Coal Mining Co., and this company established on the ground such buildings and improvements as were necessary to develop the coal and mineral in the land. At the time these improvements were being made Johnson leased the piece of land reserved as a graveyard to the appellants, Davidson and Penix, and there was erected on the leased premises a dwelling house and another building in which they established a general store. Thereafter the Elkhorn Company brought this suit in equity against Johnson and his lessees, Davidson and Penix, for the purpose of enjoining them from occupying the dwelling and conducting a store in the other building, and from entering upon the reservation except for the purpose of taking care of and protecting the grave thereon.

Johnson and his lessees, after putting in issue the material averments of the petition, set up that the cost of the buildings and improvements erected by them on the piece of ground reserved was about $800; that the Elkhorn Company, without making protest or objection, had actual notice of the erection of these buildings and the purposes to which they were to be put and was therefore estopped to ask their removal or that Johnson and his lessees be enjoined from using them.

Upon hearing the case, after evidence had been taken, the lower court entered a judgment perpetually enjoining the use of the lot for any purpose other than as a graveyard, and from maintaining any buildings thereon, and ordered the removal, within a reasonable and specified time, of the buildings that had been erected. To obtain a reversal of the judgment is the purpose of this appeal.

There is no charge of fraud or mistake in the execution or wording of the contract of sale or the deed pur-

suant thereto, and although the record contains some conflicting evidence showing the intention of the parties and the purpose of the reservation, we do not find it necessary to enter into a discussion of this evidence because we think the case must be determined from a consideration of the terms employed by the parties in making the reservation.

We think it is plain, from a consideration of the writings, that Johnson had in his mind at the time he sold the tract of land the purpose to save from intrusion, by the grantees or persons claiming under them, this piece of ground as a graveyard. And it is equally plain that the grantees were willing that this lot should be reserved as a graveyard. Having reserved the lot as a graveyard, did Johnson have the right, over the objection of the grantees, to use it for commercial purposes, or for any other purposes than such as were necessary to preserve the lot for the purposes for which it was set apart in the writings? We think not.

When there is a reservation of a lot for a specific purpose, and that purpose is expressed in the writing, it would be manifestly unfair to permit the grantor to use and occupy the lot for purposes entirely disconnected with and outside of the object of the reservation. The grantee might be perfectly willing to permit the grantor to reserve a lot for a specified purpose when he would not be willing that it should be reserved for another purpose, and when the use to which the lot is to be put is plainly expressed in the contract, the grantor should not be permitted, over the objection of the grantee, to use the lot for an entirely different purpose and one that was not in the contemplation of the parties at the time the transaction was entered into. If there had been a general reservation of this lot, or a reservation without specifying the purpose, the grantor could of course have used the lot in any way he desired, but evidently the grantor only desired to preserve this lot for graveyard purposes, and the wording of the reservation expresses very intelligently this intention. The condition is not susceptible of any other reasonable interpretation. Nor can it be said that the word "graveyard" was used merely for the purpose of identifying the location of the lot. This word was used with a view of describing the purpose for which the lot was intended and the uses to which it should be put. There is indeed no substantial difference between this case and Brown v. Anderson, 88 Ky. 577,

which was followed in Damron. v. Justice, 162 Ky. 101. To the same effect is Lennig v. Ocean City Association, 41 N. J. Equity 606, 56 Am. Rep. 16.

Passing this feature of the case, it is next insisted by counsel for appellants that the Elkhorn Company was estopped by its acts and conduct from asking the court to have removed the buildings on the lot or to restrain Johnson and his lessees from using them for dwelling and mercantile purposes. The argument in support of this proposition is that the Elkhorn Company and its employes were present when the buildings were being erected and had notice of the uses to which they would be put, but did not offer any objection to their erection or make any complaint until after the buildings had been finished and one of them had been occupied as a store and the other as a residence.

There is really little or no dispute as to the facts bearing on this issue. The agents of the company who were on the premises saw the buildings being erected and knew what use was intended to be made of them, but it appears that they did not know until after the buildings had been put up and were occupied that the condition in the deed did not permit their erection on the land, and, believing that Johnson and his lessees had the right to erect and occupy the buildings, no objection was made.

The consent of the company that the buildings might be erected was not asked by Johnson or his lessees, nor does it appear that the right to put the buildings up was ever discussed between the parties before or at the time of their erection or until after they had been completed and occupied, which was only shortly before this suit was brought. Looking at it in the most favorable light for Johnson and his lessees, all that can be said is that the company stood by and saw the buildings being erected and knew the use to which it was intended to put them, without offering any objection. But neither Johnson nor his lessees were induced to erect the buildings by anything that the company said or did. They put them up without asking the advice or the consent of the company.

According to our construction of the conditions in the writings, Johnson and his lessees must have known that they had no right to put buildings on this lot, and the company, under the circumstances, is not estopped by its silence from insisting that they should remove them. We do not know of any case going so far as to hold that the company had estopped itself from asking the aid of the

court to prevent a continued violation of the condition in the deed. A person who, with notice of the fact that, he has no right to erect a building on land, deliberately does so, is not in a good position to claim that the party who has been injured by his wrongful act is estopped to ask the aid of the court to redress the wrong merely because he saw the building in course of construction without entering objection. In nearly every case in which the doctrine of estoppel has been successfully invoked the party relying on it was able to show that he was acting in the good faith belief that he had the right to do what he was doing, and that the other party by his acquiescence permitted him to incur expenses that he would not have incurred if objection had been made or he had known that he was not legally authorized to do what he was doing. Trimble v. King, 131 Ky. 1; Fitzpatrick v. Baker, 155 Ky. 175; Fields v. Couch, 169 Ky. 554; Advance Thresher Co. v. Fishback, 157 Ky. 427; Torbitt & Castleman v. Middlesboro Grocery Co., 147 Ky. 343.

The essential facts upon which equitable estoppel rests are lacking in this case. Johnson and his lessees knew they had no right to erect buildings on the land. They were not induced to put up the buildings by anything the Elkhorn Company did or said.

The judgment is affirmed.