## Johnson, et al. v. Elkhorn Gas Coal Mining Company.

(Decided January 31, 1922.)

### Appeal from Floyd Circuit Court.

1. Deeds—Construction—Reservation—Exceptions.—Where a deed conveying a tract of land reserves, excepts or excludes a portion thereof for a particular purpose, the grantor cannot use the land for any other purpose.

2. Deeds—Construction of Reservations.—Where a contract for the sale of land contained the provision, "grantor reserves about one acre around graveyard for a residence," and the deed contained the clause, "There is excluded from the above described boundary the following described tract around a graveyard for a residence," the grantor has no right to use the excepted tract for any other than graveyard or residence purposes.

3. Reformation of Instruments—Fraud or Mistake—Degree of Proof.—To reform an executed contract on the ground of fraud or mistake, the evidence must be clear and convincing, or such as to establish the fraud or mistake beyond reasonable controversy.

4. Reformation of Instruments—Evidence—Sufficiency.—In a suit where the defendants sought the reformation of a deed on the ground of fraud or mistake, evidence held not sufficiently clear and convincing to authorize the relief asked.

A. J. MAY for appellants.

B. F. COMBS and SMITH & COMBS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Daniel R. Johnson owned a farm on Left Beaver creek in Floyd county. In the year 1904 he sold the coal and other minerals to the Northern Coal & Coke Company. On February 26, 1913, he sold the surface to the Beaver Creek Fuel Company for $10,000.00, and he and his wife executed a written contract, by which they bound themselves later on to execute a deed conveying the property to the purchaser. The contract contained the following provision: "Grantor reserves about one acre around graveyard for a residence." On May 15, 1913, Johnson and wife complied with the written contract by executing a deed which described the entire farm and then contained the following provision: "There is excluded from the above described boundary the following described tract around a graveyard for a residence." Then follows an accurate description of the property reserved.

The Elkhorn Gas Coal Mining Company leased the minerals in this and other lands, and then purchased the surface tract from the Beaver Creek Fuel Company for the purpose of conducting a coal mining plant and laying out a mining town. Johnson was living on the excepted land at the time the contract and deed were executed, and was conducting a grocery about one hundred yards distant from the lot. He continued to live on the place in the old residence for three or four years, and then vacated the premises and moved to Pike county. Before leaving the premises he and his lessee, Bentley & Johnson Mercantile Company, erected a storehouse and two or three dwelling houses on the lot excepted. They afterwards sold the store and lot to the Bentley & Johnson Mercantile Company.

This suit was brought by the Elkhorn Gas Coal Mining Company to enjoin Johnson and wife and Bentley & Johnson Mercantile Company from using the excepted lot for any purpose other than a residence or graveyard. The defendants pleaded that the provision of the deed limiting the use of the excepted lot for residence purposes only was inserted by fraud and mistake. Plaintiff denied fraud or mistake and further pleaded that it was an innocent purchaser for value. On final hearing the relief prayed for was granted and the defendants appeal.

It appears that the purchaser was represented by W. F. Hite and D. B. Gibson. Johnson's son was buried on the land. Both Gibson and Hite testified that the lot was excepted by the defendants particularly on account of the grave. They told Johnson that if he was excepting the lot with the intention of erecting a store building upon it, they did not want the land. In reply Johnson stated in his wife's presence that she might become dissatisfied and desire to return and would want some place on which to build a residence. Hite then told him that he would agree to a residence, but that Johnson could not build a storehouse on the lot. Thereupon the provision limiting the use of the exception to a residence was written in the contract. Gibson, who wrote the contract, read it aloud to Johnson and wife, and then they read it and signed it. Before the agreement was executed, the parties stepped off the lot. Later, the lot was surveyed and the description thus obtained was inserted in the deed. The deed was acknowledged in the presence of James Salisbury, a notary public. It was prepared from the written contract. Salisbury took the deed and went to Johnson's residence. He read the entire deed to the Johnsons. Johnson directed his attention to the exclusion and was more particular about reading the exclusion than anything else. It further appears that Johnson was a man of prominence in his community, had accumulated considerable property, had been justice of the peace, deputy clerk of the county court and postmaster. Warfield Johnson deposed that, shortly after Daniel R. Johnson sold the property, he approached Daniel with reference to renting a store on the lot, and that Daniel stated to him that he had "sorter promised" the coal company not to do that.

On the other hand, Daniel R. Johnson says that the trade was made by his wife. The understanding between them and Messrs. Hite and Gibson was that he retain the excepted lot for any purpose that he wanted to use it for. He was then in the mercantile business and when Mr. Hite inquired, "What is your idea for keeping so much land here?" he told Mr. Hite that he could not make out on less if he sold goods there. He told them at the time that if he sold the rest of his land, he had no land to farm and he was going into the goods business. At that time Mr. Hite said that if the company could not fetch goods there and sell them cheaper than anybody

else, "let them go to hell for it." Witness denied that Hite had said anything about not taking the land if he was going to conduct a store on it, or that he said anything about his wife wanting a place to live on in case she desired to return. When Salisbury came with the deed, Salisbury stated that Mr. Hite had told him to take the acknowledgment to the deed and to have it fixed so that it would satisfy witness. Witness's understanding of the deed was that it gave him the right to use the land for mercantile purposes. His wife could not read or write. Witness admitted on cross-examination that the contract was read to him at the time it was executed and was read correctly. Witness further stated that he either read or heard the deed read, but did not guess that he understood the legal part of it. He had sold the stock of goods in his old store but had not taken them out at the time that he and Mr. Bentley went into the goods business. He further said that he disposed of the old stock in order to start a new store. Sarah Johnson, the wife of Daniel R. Johnson, deposed as follows: When Mr. Hite and Mr. Gibson came to the house, she walked up part of the way to the excepted lot. She knew that Mr. Hite understood that they were to keep the lot for any purpose that they wanted, and Mr. Gibson ought to have known it. When Mr. Salisbury came to take their acknowledgment to the deed, she said, "Make it so that it will make us safe." She was hard of hearing and did not understand everything he said. She just let Daniel R. and him fix it up; told Daniel R. to fix it so that there would not be any trouble about it. If she had known that it did not contain the reservation giving them the right to use the lot for any purpose they wanted to use it for, she would not have signed it.

We have ruled in a number of cases that where a deed conveying land, reserves, excepts, or excludes a portion thereof for a particular purpose, the grantor cannot use the land for any other purpose. Brown v. Anderson, 88 Ky. 577, 11 S. W. 607; Damron v. Justice, 162 Ky. 101, 172 S. W. 120; Johnson v. Elkhorn Gas Coal Mining Company, 176 Ky. 676, 197 S. W. 409. In the case of Brown v. Anderson, *supra,* the deed contained the clause, "excepting and reserving one-half acre of land of said tract, being the old family graveyard of the grantor, together with the right of way to said graveyard." It was held that the tract excepted could be used for no other

purpose than a graveyard, and only for the interment of the grantor's family. In the case of Johnson v. Elkhorn Gas Coal Mining Company, *supra,* the contract contained the following: "There is a reserve of one-fourth of an acre square around a graveyard on the hillside." In carrying out the contract the vendors executed a deed containing the following provisions: "There is excluded from the above described tract the following described boundary around a grave." It was held that the grantor could not use the lot for any other purpose than a graveyard. In the case at bar, the contract and deed are similar to those in the last mentioned case in that the word, "reserves," is used in the contract, while the word, "excluded," is used in the deed. However, each clause is more explicit as to the purpose of the reservation or exclusion in that it adds the words, "for residence purposes." We therefore conclude that the tract reserved may be used only for graveyard and residence purposes.

But it is insisted that the deed should be reformed on the ground of fraud or mistake. To reform an executed contract on the ground of fraud or mistake, the evidence must be clear and convincing, or such as to establish the fraud or mistake beyond reasonable controversy. Atha v. Webster, 181 Ky. 581, 205 S. W. 598; Johnson v. Gadberry, 174 Ky. 62, 191 S. W. 865. It was not shown that either Gibson or Hite, who were present when the contract was executed, made any false statement as to the provisions of the contract, or did or said anything to prevent the Johnsons from reading it or otherwise learning its contents. On the contrary, it is admitted that the contract was read to the Johnsons as written, and then signed by them. Nor was there any evidence that Salisbury, the notary public who took the acknowledgment to the deed, did or said anything calculated to deceive the Johnsons. He merely prepared the deed in accordance with the contract and then read the deed to the Johnsons. Johnson called attention to the exclusion and was more particular about reading the exclusion than anything else. When we reflect that the statements of Johnson and wife are contradicted by Hite and Gibson, that Johnson, though an able and experienced business man, signed the contract after being acquainted with all its terms, that about three months later he signed the deed without making any claim that either the original contract or the deed itself did not represent the true agreement, we are

inclined to agree with the chancellor that the evidence is not sufficiently clear and convincing to authorize a reformation of the deed on the ground of fraud or mistake.

Judgment affirmed.